[No. 845.]

## THE STATE OF NEVADA, RESPONDENT, *v.* WILLIAM THOMPSON, INDICTED BY THE NAME OF HARRY HUFF, APPELLANT.

INDICTMENT—MURDER IN THE FIRST DEGREE—WILLFUL, DELIBERATE AND PREMEDITATED.—In order to sustain a conviction of murder in the first degree, it is not essential that the indictment should state the words "willfully, deliberately and premeditately," in addition to the words "unlawfully and with malice aforethought."

INSANITY AND INTOXICATION.—Instructions given by the court to the effect that temporary insanity produced by intoxication does not destroy responsibility if the party, when sane and responsible, made himself voluntarily intoxicated: *Reviewed*, and held to be correct.

APPEAL from the District Court of the Fourth Judicial District, Humboldt County.

The facts appear in the opinion.

*L. A. Buckner*, for Appellant:

I. The indictment only charges murder in the second degree. When an indictment charges that the offense was committed in the perpetration or attempt to perpetrate arson, rape, robbery, or burglary, it is immaterial to show that the intention was to kill. The statement of the facts constituting either of the above-named public offenses, with the additional fact that death was the result of their commission, the law exclusively presumes the intent was to commit murder in the first degree. In the other classes specifically mentioned, to wit: *poison, torture* and *lying in wait*, the words *ex vi termini* charge murder in the first degree, whilst all other kinds of murder *of the first degree* can only be sufficiently charged by the use of the technical phrase "willful, deliberate and premeditated."

This subject is elaborately discussed by Bishop, in his work on criminal law. (Sections 797 *et seq.*)

The opinion in the *State* v. *Millain*, 3 Nev. 409; does not correctly state the law. The reasoning of the court is not sound; still, the indictment in that case might have been sustained without denying the correctness of the position here contended for, as the indictment stated that Millain

killed Bulette "by choking and strangling" her, thus show-ing that the murder was committed by *torture* and neces-sarily implied that it was willful, deliberate and premedi-tated.

It is a necessarily logical deduction that where a public offense has been divided into degrees, in order to convict of the greatest, you must state the facts to show that de-gree. If the indictment is for "larceny" a conviction of "grand larceny" cannot be had unless the value of the property charged as having been stolen is stated to be fifty dollars or over, and so of all the offenses marked off into degrees.

If, when the legislature divided murder into degrees, it had designated murder in the second degree by some other name, as had been done in relation to manslaughter, then no difficulty would ever have occurred, for there is just as marked distinction between the crime in the first and second degree as between it in the second degree and man-slaughter. The intent and act are as different as in murder of the second degree and manslaughter. It was a neces-sity to require the jury to find the degree, so long as the general denomination murder was used for both offenses. (Cr. Pr. Act, sec 412.)

The legislature has no right to prescribe a form of in-dictment dispensing with the necessity of complying in sub-stance with the constitutional rights of persons defined in the declaration of rights. Nor did it do so for the act (Criminal Proceedings) carries out those provisions, which are identical with those of the common law. (Comp. L. 682; 5 T. R. 611, 623.)

The indictment ought to be certain to every intent and without any intendment to the contrary. (Cro. Eliz. 490; Cro. Jack. 20.) Every crime must appear on the face of the record with a scrupulous certainty (1 Cold. 187), and every averment must be so stated that the party accused may learn the general nature of the crime of which he is charged, and who the accusers are whom he will be called to answer. (1 T. R. 69.) The offense must be positively charged, and not stated by way of recital. (2 Stra. 900, notes 1, 2, Lord Raym, 1363.)

The indictment must charge the offense in the words of the statute. (*People* v. *Logan*, 1 Nev. 110; *People* v. *Dolan*, 9 Cal. 576; *Frazer* v. *The People*, 54 Barb. 306; *People* v. *Stockton*, 1 Parker, 424; *Thompson* v. *The People*, 3 Parker, 208; *People* v. *Allen*, 5 Denio, 74.)

*John R. Kittrell, Attorney-General*, for Respondent:

I. The indictment follows the statutory form *in hœc verba*, and has been held to be sufficient by this court repeatedly. (*State* v. *Millain*, 3 Nev. 409; *State* v. *Anderson*, 4 Id. 265, Crim. Pr. Act. sec. 235.)

In an indictment for murder, it is not necessary that the indictment should specifically aver that the killing was "willful, deliberate and premeditated." It is sufficient to charge the crime in the words of the statute. (*People* v. *Dolan*, 9 Cal. 576; *People* v. *Murray*, 10 Id. 309.)

The indictment charges the defendant generally with the commission of the crime of murder. There is no such thing under the criminal code of this state, or in any criminal practice act, as charging murder in the several degrees of that offense. "Murder," is a generic term and embraces both murder in the first and second degrees, and where the jury designate by their verdict the degree in which they find a defendant guilty, it is all the law requires under our system.

An indictment for murder should not state or designate the degree of murder. (*People* v. *Lloyd*, 9 Cal. 54; *People* v. *King*, 27 Id. 507.)

On the trial of this case an attempt appears to have been made at a defense on these grounds: First. That the deceased committed suicide; Second. That the defendant was insane at the time of the commission of the homicide. Third. That from habits of long continued drunkenness, he was incapable of forming that deliberate and premeditated intent to kill, that is requisite to constitute the crime of murder in the first degree.

There is nothing whatever in the evidence which tends to show that it was a case of *felo de se*. On the contrary, there is an abundance of testimony going to show, and sufficient

to convince the commonest understanding that McRavy came to his death by a pistol-shot fired from the hand of the defendant, and that it was discharged with an intent to take the life of his victim.

II. The instructions relative to insanity, correctly state the law. (*People* v. *Williams*, 43 Cal. 345; *United States* v. *Drew*, 1 Lead. Case, (crim.) 131; *United States* v. *McGlue*, 1 Curtis C. C. 1; *Lawton* v. *Sun Mut. Ins. Co.*, 2 Cush, 500; *Cornwall* v. *State*, Martin & Yer. 147–49.

By the Court, LEONARD, J.:

Appellant was indicted for killing one William McRavy, on or about January 2, 1877, in Humboldt county, in this State, and was convicted of murder in the first degree. By his counsel, he moved in arrest of judgment on the ground that the indictment did not comply with the provisions of section 286 of the criminal practice act, in this: "The statement of the acts charged in the indictment does not constitute the offense of murder in the first degree, because it is not stated that the defendant feloniously killed William McRavy, a human being, with malice aforethought, deliberately and premeditatedly. The facts stated in the indictment do not constitute a public offense, because it is not charged the killing was done with felonious intent, and it is not stated that William McRavy was a human being, and it does not so appear from the indictment." This motion was denied by the court and exception taken. Defendant also moved the court to grant a new trial on the grounds, first, that the verdict was contrary to law and evidence; second, that the court misinstructed the jury in matters of law excepted to on the trial.

This appeal is taken from the judgment and the order overruling appellant's motion for a new trial.

The several grounds of error presented on motion in arrest of judgment and for new trial are urged by appellant on appeal.

The charging part of the indictment was as follows:

"Defendant, Harry Huff, above named, is accused by the grand jury of the county of Humboldt, State of Nevada,

of the crime of murder, committed as follows: The said Harry Huff, on the second day of January, A. D. 1877, or thereabouts, at the county of Humboldt, State of Nevada, and before the finding of this indictment, without authority of law, and with malice aforethought, did then and there kill and murder one William McRavy, by shooting him with a pistol commonly called a revolver, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Nevada."

First. Counsel for appellant claims this indictment is insufficient to sustain the judgment of murder of the first degree, for the reason that it does not contain the words "willfully, deliberately and premeditatedly," in addition to the words "unlawfully and with malice aforethought;" that because of the failure to insert said words the indictment charges only murder of the second degree; and that, therefore, the judgment of the court is erroneous.

It is a well-established principle of the criminal law "that a want of averment cannot be helped by evidence, and that a jury cannot convict a person of any crime, however clearly it may be proved, unless it is duly and technically set forth in the indictment." It follows that if this indictment does not charge murder of the first degree it will not sustain the judgment. Does this indictment, then, in proper words, duly charge the crime of murder of the first degree?

Under the statute, "murder is the unlawful killing of a human being with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned." "All murder which shall be perpetrated by means of poison, lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery or burglary, shall be deemed murder of the first degree; all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, designate by their

verdict whether it be murder of the first or second degree."
(Secs. 2321, 2323, C. L.)

This indictment contains all that the statutory form requires, and much besides.   In fact, counsel for appellant do not urge any other faults against it than those above stated. It charges the crime of murder, substantially, as that crime was defined at common law, and according to the statutory definition.   This court has decided that the power of the legislature to mold and fashion the form of an indictment is plenary, but that its substance cannot be dispensed with. (*State* v. *O'Flaherly*, 7 Nev. 157.)

Is this indictment lacking in any material allegation necessary to support a judgment of murder of the first degree?

The substantial, essential facts necessary to be found by the grand jury, and stated in the indictment, are these: "The indictment must be direct and certain, as it regards: First.   The party charged; Second.   The offense charged; Third.   The particular facts of the offense charged, so far as necessary to constitute a complete offense, but the evidence tending to prove the charge need not be stated."   (C. L. sec. 1860.)

"The indictment shall be sufficient if it can be understood therefrom: First.   That it is entitled in a court having authority to receive it, though the name of the court be not accurately set forth; Second.   That it was found by a grand jury of the district in which the court was held; Third.   That the defendant is named, or, if his name cannot be discovered, that he be described by a fictitious name, with a statement that he has refused to discover his real name; Fourth. That the offense was committed at some place within the jurisdiction of the court; Fifth.   That the offense was committed at some time prior to the finding of the indictment; Sixth.   That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended; Seventh.   That the act or omission charged as the offense is stated with such a degree of certainty as to enable

the court to pronounce judgment upon a conviction according to the weight of the case." (C. L. sec. 1867.)

If this indictment is in any manner faulty, it must be in failing to fill the requirements of the sixth and seventh subdivisions of the section last quoted.

Although the questions presented by counsel for appellant, as to the sufficiency of this indictment to support the judgment rendered, have been passed upon substantially by former decisions of this court, with the conclusions of which as to the sufficiency thereof we agree, still, the same being again persistently and ably presented, we have carefully re-examined the objections of counsel for appellant, and our investigations have only confirmed us in the correctness of the opinions heretofore entertained by this court; that an indictment like this is sufficient, both in form and substance.

Under the common law an unlawful killing of a reasonable creature in being, in the peace of the State, with malice aforethought, by a person of sound memory and discretion, was murder, and the punishment therefor was death. Under the statute a commission of the same act, in like manner and with the same intent, completes the crime of murder. True, the statute has divided the same offense into two degrees, but the result of this is not the creation of a new offense. The general definition of murder in the statute includes both degrees, the same as at common law it included all cases of felonious homicide, not only where the murder was perpetrated by means of poison, or lying in wait, torture or by any other kind of willful, deliberate and premeditated killing, etc., but also those cases where the killing was not characterized by any particular atrocity, or by deliberation or premeditation. The division of the offense into two degrees, and declaring that a murder perpetrated by certain means and with a certain intent should be murder of the first degree, and that all other murder should be murder of the second degree, is simply and only a guide for the jury in arriving at their verdict from the evidence, under the instructions of the court. Nor was it necessary that the act with which appellant was charged should be more clearly or distinctly set forth, in order to

enable a person of common understanding to know what was intended. He knew if he pleaded "not guilty" that the jury, if they found him guilty, must and would find the degree; and that if he plead guilty by confession in open court, the court must and would proceed, by examination of witnesses, to determine the degree of the crime and give sentence accordingly. Such is the duty of the court and jury in every charge of murder, regardless of the degree. If the theory of counsel for appellant be true, why, then, in case of confession, does the statute require the court to ascertain the degree from the evidence of witnesses, even though the defendant is charged with murder in the second degree only? It being undeniably true that a person cannot be convicted of this crime without being first duly charged therewith by indictment, what possible reason can be given for requiring of the court so useless an act, in case of confession, as the taking of testimony in order to ascertain the degree, when, if he is charged with only murder in the second degree, he cannot in any event be convicted for any higher grade? And, too, in such case, why require the jury to find the degree, when the only degree they could find would be the second? If the theory of counsel for appellant be true, we can only escape convicting the legislature of utter foolishness by concluding that all indictments for murder must charge murder of the first degree, which, according to counsel's theory, can be done only by alleging deliberation, premeditation, lying in wait, etc. Suppose it should be decided by this decision, and become the established law of the state, that this indictment, and all like it, charge only murder of the second degree. Thereafter the second degree could be charged by following this as a precedent. In such case, if the state should not deem a certain defendant guilty beyond the second degree, the district attorney should and would follow this form; and yet, in the same case, the court or jury would be obliged to go through with the useless farce of finding the degree, when only one, that is the second, could possibly be found.

It has been decided, in numerous cases, that an indictment for murder should not designate the degree; that the trial jury, and not the grand jury, should determine it, and

that the former should not be embarrassed by the opinion of the latter. (*People* v. *King*, 27 Cal. 512.)

If that be so, why is it necessary or proper to use words which, with the same certainty, indicate the degree?

We are satisfied that, under our statute, an indictment for murder, which charges the crime according to the common law form, is sufficient to sustain a judgment for either degree, and that the legislature so intended. And such is the view entertained by the great weight of authorities in states whose statutes are similar to ours. (*Wicks* v. *Commonwealth*, 2 Va. cases, 390; *Mitchell* v. *State*, 8 Yerg. 525; *Id.*, 5 Yerg. 345; *White* v. *State*, 16 Tex. 206; *Wall* v. *State*, 18 Tex. 682; *Gehrke* v. *State*, 13 Tex. 586; *Bull's case*, 14 Gratton, 620; *Livingston's case*, 14 Gratton, 596; *White* v. *Commonwealth*, 6 Binney, 182; *Hines* v. *State*, 8 Humph. 598; *People* v. *White*, 22 Wend. 175; *People* v. *Enoch*, 13 Wend. 159; *People* v. *Cronin*, 34 Cal. 191; *People* v. *Dolan*, 9 Cal. 576; *People* v. *Murray*, 10 Cal. 309; *State* v. *Anderson*, 4 Nev. 273; *McAdams* v. *State*, 25 Ark. 416; *Green* v. *Commonwealth*, 12 Allen, Mass. 170.)

On the contrary, it has been held, in Iowa, Indiana, Ohio and Missouri, under statutes something different from ours, that an indictment which simply charges the homicide to have been committed with malice aforethought, without charging a premeditated design, or lying in wait, torture, etc., will not support a conviction of murder in the first degree. (*Fouts* v. *State*, 4 G. Greene, Iowa, 500; *State* v. *McCormick*, 27 Id. 402; *Finn* v. *State*, 5 Ind. 400; *Fouts* v. *State*, 8 Ohio, 98; *State* v. *Jones*, 20 Mo. 58.) We are satisfied with the reasoning of the former decisions, and adopt their conclusions. They greatly outnumber the latter class and sustain the evident intention of the legislature, without infringing the rights of the accused.

Second. Appellant next urges that the verdict is contrary to the evidence. There was testimony tending to show not only that defendant committed the homicide at the time and place stated in the indictment, but also that he committed it with premeditation and deliberation. An effort was made by the defense to show that deceased com-

mitted suicide; that defendant was insane and that he was drunk at the time. There was no proof tending to establish the fact of suicide; none to show insanity at the time, beyond that which is the immediate effect of excessive drinking. On the contrary, there was the testimony of many witnesses who saw the defendant for days prior to the homicide, establishing the fact that he was at all times conscious of his acts and knew good from evil. Under such circumstances we need not repeat what has been so often decided by this court, that upon this ground the judgment of the court below will not be reversed.

Third. Appellant claims that the court misinstructed the jury in a matter of law, in this: At the instance of defendant's attorney the court instructed the jury as follows: "In every crime or public offense there must be a union or joint operation of act and intention or criminal negligence. That intention is manifested by the circumstances connected with the perpetration of the offense and the sound mind and discretion of the person accused. A person shall be considered of sound mind who is neither an idiot nor a lunatic, or affected with insanity, and who hath arrived at the age of fourteen years, or before that age, if he knows the distinction between good and evil. Drunkenness shall not be an excuse for any crime, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person or persons, for the purpose of causing the perpetration of an offense."

At the instance of the district attorney, the court gave the following instruction to the jury:

"It is a well-settled rule of law that drunkenness is no excuse for the commission of a crime. Insanity produced by intoxication does not destroy responsibility when the party, when sane and responsible, made himself voluntarily intoxicated; and drunkenness forms no defense whatever to the fact of guilt, for when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of his own gross misconduct to shelter himself from the legal consequences of such crime. Evidence of drunkenness can only be considered by the jury for the pur-

pose of determining the degree of the crime, and for this purpose it must be received with caution." Counsel for appellant urge that the last instruction conflicts with the former upon the question of insanity. We do not think so. The first treats of settled insanity, the last of temporary insanity produced immediately by intoxication.

An eminent writer upon criminal law thus states the established principles upon this subject:

"Settled insanity, produced by intoxication, affects the responsibility in the same way as insanity produced by any other cause. Temporary insanity, produced immediately by intoxication, does not destroy responsibility where the patient, when sane and responsible, made himself voluntarily intoxicated. While intoxication *per se* is no defense to the fact of guilt, yet, when the question of intent or premeditation is concerned, evidence of it is material for the purpose of determining the precise degree." (Wharton on Homicide, sec. 587 *et seq.*)

Another author says: "When a man voluntarily becomes drunk, there is the wrongful intent; and if, while too far gone to have any further intent, he does a wrongful act, the intent to drink coalesces with the act done while drunk, and for this combination of act and intent he is liable criminally. It is, therefore, a legal doctrine, applicable in ordinary cases, that voluntary intoxication furnishes no excuse for crime committed under its influence. It is so, even, when the intoxication is so extreme as to make the person unconscious of what he is doing or to create a temporary insanity." (Bishop's Crim. Law, sec. 400.)

In *United States* v. *McGlue* (Curtis' C. C., vol. 1, p. 13), the court say: " If a person suffering under delirium tremens is so far insane as I have described to be necessary to render him irresponsible, the law does not punish him for any crime he may commit. But if a person commits a crime under the immediate influence of liquor, and while intoxicated, the law does punish him, however mad he may have been." (*Cornwall* v. *State*, 4 Cooper's Ed. Tenn. 496.)

The testimony in this case shows that appellant, prior to January 2, 1877, drank very considerably, and sometimes

excessively, for several years; that a year or two before that time he had the delirium tremens. But there is no testimony tending to show that he was so afflicted at the time of, or within two years before the death of McRavy. All the testimony shows that he drank so much as to be under the influence of liquor for several days prior to January 2, and on that day he was so affected. The testimony further shows that prior to the homicide he was conscious of what he did, although under the influence of liquor. Under such circumstances, any instruction upon insanity, beyond that which is the immediate effect of intoxication, would have been improper, and would have been harmless had it been given, because there was no evidence to which it could have applied.

Temporary insanity produced by intoxication does not destroy responsibility if the party when sane and responsible made himself voluntarily intoxicated. We are satisfied the jury must have understood the instruction in that sense, and that under the testimony it made no difference if they did not.

This instruction was copied verbatim from one given in the case of *People* v. *Lewis* (36 Cal. 531), and also in *People v. Williams* (43 Cal. 345), and it was declared correct in each case.

We think the instructions, taken together, fairly presented the law of the case.

Finding no error on the part of the court below, its order and judgment are affirmed, and the district court is directed to carry its sentence into execution.