[No. 2421]

## THE STATE OF NEVADA, RESPONDENT, v. EMILIANO MUNIOS, APPELLANT.

[195 Pac. 806]

1. HOMICIDE—LEGISLATURE CAN DISPENSE WITH COMMON-LAW FORMALITIES AS TO INDICTMENT.

   The legislature can dispense with the common-law formalities required in charging murder in an indictment, and prescribe a form without them, as Criminal Practice Act, sec. 201.

2. HOMICIDE—INDICTMENT IN STATUTORY FORM HELD SUFFICIENT TO CHARGE FIRST-DEGREE MURDER.

   After the statute (Rev. Laws, 6386) as to murder was amended in 1915 (Stats. 1915, c. 48) to declare murder perpetrated by poison, or lying in wait, or torture, or committed in the perpetration of or attempt to perpetrate arson, rape, robbery, or burglary, murder in the first degree, and all other kinds of murder, murder in the second degree, an indictment simply charging, in the form prescribed by Criminal Practice Act, sec. 201, then existing and not afterwards changed, that defendant did, "without authority of law, and with malice aforethought," kill and murder by cutting him with a knife, was sufficient to charge murder in the first degree, although not charging premeditation and deliberation.

APPEAL from Sixth Judicial District Court, Humboldt (now Pershing) County; *James A. Callahan*, Judge.

Emiliano Munios was convicted of murder in the first degree, and he appeals. **Affirmed.**

*Booth B. Goodman*, for Appellant:

The indictment is insufficient to support or justify

the verdict, for the reason that it does not charge any of the necessary elements of murder in the first degree, and does not charge that the murder was "perpetrated by means of poison, or lying in wait, or torture," or that it was committed under any of the circumstances or by any of the means set forth in our statute defining murder in the first degree, and therefore charges only murder in the second degree. Stats. 1915. "An indictment or information charging an offense denounced and defined by statute should be as fully descriptive of the offense as is the language of the statute, and should allege every substantial element of the offense defined by statute." 14 R. C. L. 32. "Where an intent is an ingredient of the offense necessary to be charged, there is no sufficient averment of an intent where it is merely alleged that the defendant did the specific acts charged in an attempt to commit crime." State v. Lung, 21 Nev. 209. At common law the omission of the words "malice aforethought" and "murder" makes the indictment incapable of sustaining a conviction of murder. "The qualifying words which define murder in the first degree, when committed other than by specific methods, must be inserted in the indictment." Wharton, Crim. Law, 837; 21 Cyc. 855; Schaffer v. State, 22 Neb. 557.

The statute of 1915, defining murder, goes perhaps further than other statutes, and ends with the words "all other kinds of murder shall be deemed murder in the second degree." This phrase does away with the common law and leaves murder in the first degree an offense particularly described by statute, embodying certain characteristic elements which must be pleaded. The crime has been made statutory, and we must abide by the rules in relation to the pleading of offenses defined by statute.

*R. M. Hardy,* District Attorney, for Respondent:

The only point raised is as to the sufficiency of the indictment to sustain the verdict of murder in the first degree. No other point having been raised, and, the

objection being without merit, the judgment should be affirmed.

It is not necessary in charging an offense to plead evidentiary facts, but only the ultimate facts; and it is for the court or jury to determine the degree of the crime proven. "It was not necessary at common law to even charge that murder was committed in the perpetration of another crime, and it was sufficient to charge it in the common form; and, upon proof that the crime was committed in the perpetration of another crime, such proof stood in lieu of the proof of malice aforethought. This doctrine is sustained by ample authority of the courts of other states under statutes similar to ours." Ex Parte Dela, 25 Nev. 346.

The form and requisites of any indictment have been prescribed by statute. These requisites have been repeated in subsequent enactments providing for charging by information. Rev. Laws, 7052, 7058–7060.

By the Court, DUCKER, J.:

The appellant was convicted of murder of the first degree and sentenced to life in the state prison.

This appeal is taken from the order denying a motion for a new trial. The sole question presented by appellant for determination is that the indictment upon which he was convicted does not charge murder of the first degree, but only murder of the second degree. The charging part of the indictment is as follows:

"That said defendant, Emiliano Munios, on the 15th day of August, 1918, or thereabouts, and before the finding of this indictment, at the said county of Humboldt, State of Nevada, did then and there, without authority of law, and with malice aforethought, kill and murder one Raffaelo Ricci, by cutting him with a knife."

At the time appellant is charged to have committed the crime for which he was convicted, the statute dividing murder into two degrees provided, in part:

"All murder which shall be perpetrated by means of

poison, or lying in wait, or torture, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, or which shall be committed by a convict in the state prison serving a sentence of life imprisonment, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree. * * * Every person convicted of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury trying the same; * * * and every person convicted of murder of the second degree shall suffer imprisonment in the state prison for a term of not less than ten years, and which may be extended to life." Rev. Laws, 6386, as amended by Stats. 1915, c. 48.

The statute, in one respect, is an anomaly, and we doubt if its counterpart exists or has ever existed upon the statute books of any country. It is a shocking reflection, and repellent to the common dictates of humanity, to think that, under its provisions, all the countless and atrocious forms which murder may assume, except those specially designated, including the cruel and deliberate killing of the innocent and young, the aged and the helpless, were deemed murder of the second degree, punishable by imprisonment, the minimum of which was but ten years. This strange, unnatural legislative creature came into being in 1915 and expired in 1919, "unwept, unhonored and unsung" except by the few, who, through the medium of its dispensing power, went unwhipped of public justice. We seriously question the power thus exercised, withdrawing in a large measure that security of life, guaranteed to the people of this state by the organic law of the land. The legislature of 1919 restored to the statute the provision that every wilful, deliberate, and premeditated killing shall be deemed murder of the first degree, and we must believe that the omission was either inadvertent, or its effect not fully appreciated.

"Murder is the unlawful killing of a human being,

with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned." See section 119 of "An act concerning crimes and punishments" (Rev. Laws, 6384).

By section 201 of the Criminal Practice Act (Rev. Laws, 7051) the following form is provided:

"The State of Nevada, plaintiff, against A. B., defendant. * * * Above named is accused by the grand jury * * * of a felony (or the crime of murder * * * ), committed as follows: The said A. B., on the........day of ................., A.D. 19...., or thereabouts, at the county of ........................, State of Nevada, without authority of law and with malice aforethought, killed Richard Roe, by shooting with a pistol. * * * * "

1. The legislature has the power to dispense with the common-law formalities required in charging murder in an indictment, and prescribe such a form. State v. Millain, 3 Nev. 409.

It is well settled that an indictment charging murder in the form prescribed will support a verdict of murder of the first degree. State v. Millain, supra; State v. Thompson, 12 Nev. 140; State v. Hing, 16 Nev. 307; State v. Wong Fun, 22 Nev. 336, 40 Pac. 95.

The indictment in the instant case, therefore, would have been sufficient to support a verdict of murder of the first degree before the amendment in 1915 (Stats. 1915, c. 48) dividing murder into two degrees, by which the provision "any other kind of wilful, deliberate and premeditated killing" was omitted from the statute. If it would have been sufficient then, it certainly was not insufficient at the time the appellant is charged to have committed the crime for which he stands convicted, for the amendment did not alter or affect the statutory definition of murder. It simply limited the cases of first-degree murder to those special instances designated in the statute.

The general definition of murder in the statute includes both degrees, the same as at common law it

included all cases of felonious homicide, not only where the murder was perpetrated by means of poison, or lying in wait, or torture, or by any other kind of wilful, deliberate, and premeditated killing, etc., but also those cases where the killing was not characterized by any particular atrocity, or by deliberation or premeditation. State v. Thompson, supra.

But it is urged that the provision which makes all other kinds of murder, except those designated, murder of the second degree, does away with the common law and leaves murder of the first degree an offense particularly described by the statute, and embodies certain characteristic elements which must be pleaded in the indictment. That the legislature of 1915 recognized no such effect is reasonable to assume from the fact that no attempt was made to change the statutory form prescribed for charging murder, or any of the statutory tests for ascertaining the sufficiency of an indictment. These particular instances in which murder is conclusively presumed to be murder of the first degree were embodied in the statute when the form for charging murder was prescribed. Consequently it must have been deemed that an indictment substantially in this form would sufficiently charge them. In Ex Parte Dela, 25 Nev. 353, 60 Pac. 220, 83 Am. St. Rep. 603, this court said:

"It was not necessary at common law to even charge that murder was committed in the perpetration of another crime, and it was sufficient to charge it in the common form; and, upon proof that the crime was committed in the perpetration of another crime, such proof stood in lieu of the proof of malice aforethought."

The use of poison in the commission of the crime of murder, or by lying in wait, etc., its commission in the perpetration or attempting to perpetrate any of the felonies enumerated in the statute, are merely circumstances of aggravation, which, in the law, amount to, or are the equivalent of, premeditation.

2. In alleging other forms of murder it was never

necessary in this jurisdiction to charge deliberation or premeditation. Upon principle, then, why was it necessary, under the amendment in 1915, to allege the equivalent in order to charge murder of the first degree? We hold that it was not, and that the indictment is sufficient to support the verdict.

The decisions cited by counsel for appellant to sustain his contention and holding in effect that an indictment charging homicide without charging a premeditated design, or lying in wait, torture, etc., will not support a conviction of murder of the first degree, are opposed to the great weight of authority, and contrary to the principle enunciated in State v. Thompson, supra.

The judgment is affirmed.