# THE STATE OF NEVADA, Respondent, *v.* DAVID BLACKWELL, Appellant.

No. 3521

October 4, 1948. 198 P.2d 280.

*Ernest S. Brown,* of Reno, for Appellant.

*Alan Bible,* Attorney General, *Homer Mooney,* Assistant Attorney General, and *Harold O. Taber,* District Attorney of Washoe County and *Grant L. Bowen,* Assistant District Attorney of Washoe County, both of Reno, for Respondent.

## OPINION

By the Court, HATTON, District Judge:

David Blackwell, defendant below, is the appellant

here. He will be referred to herein as the defendant.

The defendant was charged with murder as a codefendant with one Arnold Thomassen, in an Information filed by the district attorney of Washoe County, Nevada, on December 17, 1947. On December 22, 1947, the defendant Blackwell entered a plea of guilty to the information, before Honorable Taylor H. Wines, district judge of the Fourth judicial district of the State of Nevada, sitting as a judge in the Second judicial district. The plea was accepted and entered of record. The court then informed the defendant that it was necessary, under the charge against him, that he be tried before the court, without a jury, for the purpose of determining the degree of the crime. Defendant's counsel requested that the testimony of certain defense witnesses from without the state be taken that day. The court stated that, beginning on the following morning, the court would hear the taking of the testimony of the said witnesses for the purpose of perpetuating such testimony. The court convened on the following morning, December 23d, and the judge inquired if the defendant had the necessary affidavits as required on procedure to perpetuate testimony, to which counsel for defendant replied that they had no such affidavits. The judge then stated that he felt himself to be disqualified to act in the case except, perhaps, upon the taking of the testimony to be perpetuated. Defendant's counsel then stated that the defense considered the matter to be before the court on the merits with respect to determining the degree of the crime and the penalty, and that the testimony of the witnesses referred to should be taken at that time, and the hearing then continued to such time as would suit the convenience of the court and counsel. Argument was then had with respect to the disqualification of the judge, after which, on the same day, Judge Wines again stated that he deemed himself to be disqualified, and that he would assign the case to another judge. On December 26, 1947, Judge Wines

made an order declaring his disqualification and assigning the case to Judge Merwyn H. Brown, judge of the Sixth judicial district. To all of the foregoing proceedings the defendant entered his objections and exceptions. Beginning on January 5, 1948, and over the objection and exception of defendant, the case was heard before Judge Brown, who found the defendant guilty of murder of the first degree, and imposed the death penalty.

Our statute, N.C.L., sec. 10066, defines murder as follows: "Murder is the unlawful killing of a human being, with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned."

The degrees of murder and the procedure on the trial therefor are set forth in N.C.L., sec. 10068, as amended by the Statutes of Nevada of 1947, c. 91, page 302 as follows: "Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart. All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, or which shall be committed by a convict in the state prison serving a sentence of life imprisonment, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree; but, if such person shall be convicted on confession in open court, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and give sentence accordingly. If the jury shall find the defendant guilty of murder in the first degree, then the jury by its verdict shall fix the penalty at death

or imprisonment in the state prison for life. Upon a plea of guilty the court shall determine the same; and every person convicted of murder of the second degree shall suffer imprisonment in the state prison for a term of not less than ten years, and which may be extended to life."

The charge of the crime in the present case, as set forth in the information, reads as follows: "That the said defendants on the 7th day of November, A.D. 1947, or thereabout, and before the filing of this information, at and within the County of Washoe, State of Nevada, did wilfully, unlawfully, and feloniously, with malice aforethought, kill one LeRoy Geach, a human being, by firing bullets from a 38 caliber automatic pistol into the body of said LeRoy Geach, thereby inflicting mortal wounds upon him, the said LeRoy Geach, from which said mortal wounds the said LeRoy Geach died within a year and a day after the infliction of said mortal wounds, to-wit, on the 7th day of November, 1947."

The first assignment of error is set forth in defendant's opening brief as follows: "That Appellant was found guilty of first degree murder and sentenced to death in violation of Article I, Section 8 of the Constitution of the State of Nevada as he was twice put in jeopardy for the same offense and was deprived of his life and liberty without due process of law. After the unauthorized disqualification of Judge Wines and a retrial before Judge Brown, the Appellant was twice in jeopardy."

■ Defendant urges that Judge Wines was not disqualified, and hence that the assignment of the case by him to Judge Brown was not authorized by law. It would seem that, if the assignment of the case was not lawful, then Judge Brown was without jurisdiction to hear the same and no second jeopardy could have attached by reason of such hearing. 22 C.J.S., Criminal Law, sec. 241, p. 375. If that were the situation, it would seem that the second jeopardy, under defendant's

theory, could only attach upon the defendant's being brought to a hearing, as to the degree of the crime, before a judge empowered to hear the case. There was a change of judges, however, which change the defendant urges was unlawful and was equivalent to a mistrial on a trial before a jury, and amounted to an acquittal.

██ The authority to assign the case is furnished by the provisions of rule 41 of the Rules of the District Court. That rule reads as follows: "When any district judge shall have entered upon the trial or hearing of any cause or proceeding, demurrer or motion, or made any ruling, order, or decision therein, no other judge shall do any act or thing in or about said cause, proceeding, demurrer, or motion, unless upon the written request of the judge who shall have first entered upon the trial or hearing, of said cause, proceeding, demurrer, or motion; provided, that the judges in any district having more than one judge shall adopt such rules as they deem necessary to provide for the division and disposal of the business of their district."

Under this rule, where a judge has entered upon the hearing of a cause or proceeding, it is only upon his written request that any other judge may do any act in or about the said cause. There arises from the language of the rule the necessary inference that a judge empowered to hear a cause has the power, in his discretion, to request another judge to assume jurisdiction of such cause. Such request, in the present case, appears by the assignment on the minutes of the court. Under the rule mentioned, the judge so assigning a case is not required to state the reasons therefor. It must be recognized, however, that in any case where such an assignment would raise a second jeopardy against a defendant, such application of the rule would give way to the constitutional inhibition. On this appeal and on the views herein expressed, it is not necessary to determine what the result would have been had the assignment been made to Judge Brown after the commencement of the

hearing. The rule is well established that after trial begun before a jury, the jury may not be discharged and a second jury called except upon overruling necessity appearing of record, and that a violation of this rule constitutes second jeopardy and amounts to an acquittal. The defendant urges, from analogy, that the rule must apply where a change of judge is had in the progress of a hearing before a judge to determine the degree of murder; that is to say, a mistrial occurs. No precedent dealing with the latter situation has been presented by counsel, and we have discovered none. We regard the analogy as worthy of consideration.

There is presented, under our statutory provisions relating to murder, a situation which is seen to differ from the more simple situation where a plea of guilty is entered to an ordinary charge of crime. Blackstone, in his Commentaries, page 336, stated the rule relating to double jeopardy as follows: "Secondly, the plea of autrefois convict, or a former conviction for the same identical crime, though no judgment was ever given, or perhaps will be (being suspended by the benefit of clergy or other causes), is a good plea in bar to an indictment. And this depends upon the same principle as the former, that no man ought to be twice brought in danger of his life for one and the same crime."

In the primary application of the rule against double jeopardy, the plea of guilty protects the accused from a subsequent accusation and trial for the same offense. If, through some failure of procedure, the plea of guilty has not been followed by judgment and sentence, the accused is nevertheless protected from another trial on the same charge. As against any new charge for the same offense, he may plead the former conviction. It would seem, however, that the rule that a plea of guilty constitutes jeopardy has its proper application and force only as against a new charge for the same crime, and not to a continuing proceeding on the one, original charge.

Defendant contends that, at the stage of the proceeding when his plea of guilty was entered before Judge Wines, he was placed in jeopardy before the law with respect to the crime with which he was charged, and that his subsequent trial or hearing before Judge Brown, as to the degree and penalty, was a second jeopardy. He contends that, upon his plea of guilty, he stood convicted of murder as alleged in the information, with the presumption, without further evidence, that it was murder of the second degree, the burden being on the state to raise the offense to murder of the first degree, citing Underhill Crim.Ev. 1141, sec. 572. He contends that at this point Judge Wines stopped the trial, causing what would be, in a trial before a jury, a mistrial. He urges that the judge presumably having taken his official oath, the position of the proceedings was analogous to the point where a jury has been empaneled and sworn to try the cause, that the "trial" of the issue of degree had been entered upon and that the calling of another judge could no more be had than the calling of a new jury, upon a jury trial.

■ It has been held by this court, and also in California, that the proceeding for determining the degree of the crime of murder under our statute on a plea of guilty, is not a trial. An early expression of this view in California is found in the case of People v. Noll, 1862, 20 Cal. 164. There the court said: "The proceeding to determine the degree of the crime of murder after a plea of guilty is not a trial. No issue was joined on which there could be a trial."

The case of People v. Noll was referred to by the Supreme Court of the United States in the case of Hallinger v. Davis, 146 U.S. 314, 13 S.Ct. 105, 106, 36 L.Ed. 986. There the court said: "The statute of California in relation to this subject is in the identical language of the statute of New Jersey. In People v. Noll [supra], the defendant on arraignment pleaded

guilty. Thereupon witnesses were examined to ascertain the degree of the crime. The court found it to be murder in the first degree, and sentenced him accordingly. One of the errors assigned was that, after the plea of guilty by the defendant, the court did not call a jury to hear evidence, and determine the degree of guilty. The supreme court held: 'The proceeding to determine the degree of the crime of murder after a plea of guilty is not a trial. No issue was joined upon which there could be a trial.'"

The supreme court stated further: "While these decisions are not conclusive upon this court, yet they are entitled to our respectful consideration."

6. In State v. Ceja, 53 Nev. 272, 298 P. 658, 660, 2 P.2d 124, this court, speaking through Chief Justice COLEMAN, said that, in determining the degree of murder, "there was no issue to try." It is generally regarded that, on the trial of an accused, jeopardy does not arise until an issue has been raised by arraignment and plea. In 22 C.J.S., Criminal Law, sec. 247, p. 384, it is stated that "Issue must be joined before jeopardy can attach."

■ In the information in this case, the charge is made in the language of the definition of murder, omitting the language characterizing murder of the first degree: that is to say, that the killing was deliberate and premeditated or otherwise within the scope of the higher degree of the crime.

In the case of State v. Munios, 44 Nev. 353, 195 P. 806, it was stated by this court, speaking through Mr. Justice DUCKER, that the general definition of murder in the statute includes both degrees, the same as at common law it included all cases of felonious homicide. It was held that the charge, in the language of the general definition of murder, supported a verdict of murder of the first degree.

■ Just where did the jeopardy of the defendant begin? In considering this question we will assume, for the moment, that the proceeding for determining the

degree of the defendant's guilt was an adversary proceeding having some of the characteristics of a trial. It is well settled that a trial before a court, sitting without a jury, begins at the time of the commencement of the taking of testimony. 22 C.J.S., Criminal Law, sec. 241, p. 376, cases note 69. This did not occur until after the assignment of the case to Judge Brown. Hence there was no such discontinuance of the hearing as could be deemed comparable to the discharge of a jury after trial commenced. The change of judges occurred before the hearing commenced. Hence there was no "mistrial."

■ The growth of the doctrine as to double jeopardy and the search for the point in the proceeding where jeopardy before a jury begins has resulted in the establishing of that point at the moment where the jury has been sworn to try the cause and a true verdict render. As an earlier expression puts it, the jury are "charged with the deliverance" of the accused, and there jeopardy begins. In trials before a judge, sitting without a jury, the judge, as the defendant here urges, takes the place of a jury. However, in the settlement of the rule as to when jeopardy in a trial before a judge begins, the weight of authority, based, it would seem, on later reasoning and away from the procedure on jury trials, has resulted in the fixing of the commencement of jeopardy at the point where the presentation of proofs begins. We can see no reason, based on fairness and justice, to apply a different rule in the present case.

■ Upon the foregoing considerations, we are unable to find sufficient force in the analogy to justify the finding of a second jeopardy. We are brought to the conclusion that there was one, and only one, jeopardy incurred by the defendant in the present case, and that such jeopardy arose upon the hearing before Judge Brown when the introduction of proofs on the part of state was commenced.

The defendant's second assignment of error is in the following language: "That Appellant was found guilty

of first degree murder and sentenced to death in violation of Section 1 of Amendment XIV of the United States Constitution as he was deprived of life and liberty without due process of law, and in violation of Article I, Section 8 of the Nevada Constitution, when Judge Brown permitted inadmissible and prejudicial testimony to be admitted over Appellant's objections before the degree of murder was found. The Appellant was likewise found guilty of first degree murder in violation of the Amendment V to the Federal Constitution."

Defendant contends that the due process inhibitions of the federal and state constitutions were violated by the admission in evidence of proofs in relation to the commission by defendant of certain crimes prior to the murder charge in this case. The proofs objected and excepted to by defendant are contained in the testimony of the state's witnesses Walter Ponciano, bartender at the Highway 40 Tavern in Reno, Clayton D. Phillips, chief of the Reno police department, and Ray Ryan, superintendent of the state reformatory at Monroe, Washington.

The facts of the case, as brought out at the hearing referred to, are substantially as follows: At approximately 6:25 p. m. in the afternoon of November 7, 1947, the Highway 40 Tavern, in Reno, was held up by two armed men who took the money from the cash register and cash drawer. The robbery was reported to the Reno police department, and a description of the two men involved in the hold-up was given to the police department. When Detective Sergeants Eugene Cowan and Daryl Read reported for duty at 10 p. m. that night, Night Captain LeRoy Geach assigned to them the task of checking the various hotels of Reno for men answering the description of those who had perpetrated the robbery. Sergeant Read located the men at the Carlton Hotel. Sergeants Read and Cowan went to the hotel, where they were met by Sergeant Allen Glass and Captain Geach. The four officers proceeded to the door of

the two-bedroom suite which the men were occupying. Captain Geach knocked on the door, announced that they were officers, and demanded entrance. The door was opened by Arnold Thomassen, who had a revolver in his hand. He was disarmed by Read and Cowan, the latter taking the gun. The defendant Blackwell was lying in a bed in the adjoining room. Captain Geach entered the latter room through the door connecting the two rooms. Sergeant Cowan testified, "He (Captain Geach) took hold of the covers and he says 'Come out of there,' and this man in bed opened fire. Sergeant Glass then stepped in the doorway and cut off my view. It was all over in a matter of seconds, and Sergeant Glass was shot and took one backward step and fell, and then I started to shoot with Thomassen's gun. I shot, and he hollered 'I am hit, I am through,' and I said 'Throw down your gun.' Immediately there was a gun throwed down in the doorway and I went over and picked it up and told Daryl Read to handcuff the two of them. He handcuffed Blackwell and then Thomassen and went to the desk to get help, and while he was gone Captain Geach died, and Sergeant Glass was alive." Captain Geach was shot three times. Sergeant Glass was shot four times.

The court received the testimony of Walter Ponciano, the bartender, as to the robbery of the Highway 40 Tavern, and the defendant was identified by the witness as being one of the hold-up men. Clayton D. Phillips, the then acting chief of police of the city of Reno, testified to a conversation which he had with the defendant on November 20, 1947, at the Washoe County jail. According to Phillip's testimony, defendant in his statement admitted escaping from the Monroe State Reformatory, near Everett, Washington, on October 13, 1947; robbing a theater in Spokane, Washington, where he obtained about $150; robbing a Safeway Store in Salt Lake City, where he obtained in the neighborhood of $300; another Safeway Store in Greeley, Colorado,

where he obtained in the neighborhood of $1,300; purchasing guns at a sporting goods store in Butte, Montana; stealing cars to assist himself in his travels; shooting David Wold in Tacoma, Washington, because he had "ratted" on him; stealing a Buick sedan in Tacoma, Washington; purchasing a grappling hook, some saw blades and a rope at the store in Seattle, proceeding to the vicinity of the Monroe State Reformatory, where he used the grappling hook and rope to go over the wall of the prison, planting a gun and some ammunition near the brick school of the prison; assisting Thomassen and Blake in effecting their escape from the prison on November 5, 1947; the robbery of the U S 40 Tavern, in Reno, Nevada, returning to the hotel, where he and his companions changed clothes, that he retired around 11 o'clock that evening, that the next thing he remembered the two officers were standing by his bed and he proceeded to shoot each of them. The witness sent the information relative to the planted gun to the superintendent of the Monroe reformatory. On cross-examination by defendant's counsel, Phillips further testified that defendant told him that previous to his incarceration in the Monroe reformatory, he had been involved in numerous car thefts and armed robberies, during one of which he had shot a Tacoma groceryman. Ray Ryan, Superintendent of the Washington State Reformatory at Monroe, Washington, testified that defendant was an inmate of the institution, a state prison where men between the ages of 16 and 35 are incarcerated for felony convictions in the State of Washington; that defendant escaped on October 13, 1947, from the institution; and that acting on information received from Chief Phillips, he found a gun buried near the brick school of the institution, together with 49 rounds of ammunition. Defendant did not take the stand, and no witnesses testified in his behalf.

Defendant contends that, for the determination of

the degree of murder and the penalty, the hearing provided for by the statute involves two distinct steps: first, a trial before the court to determine the degree; and, second, an inquiry as to suitable penalty. Defendant urges that the testimony of Ponciano concerning the hold-up of Highway 40 Tavern was inadmissible because not related to the charge of murder and not within any exception to the rule prohibiting evidence of other crimes, and urges that the testimony of Phillips and Ryan was inadmissible because not related to the charge and because no corpus delicti with respect to the prior offenses of defendant, as related by them, was shown.

 In section 10068 of Nevada Compiled Laws, quoted above, it is provided that, upon a plea of guilty of murder, the court shall proceed to determine the degree of the crime and shall also determine the penalty. As stated by the Supreme Court of California in the case of People v. Bellon, 180 Cal. 706, 182 P. 240, the statute requires, at least impliedly, a judicial determination based on evidence. The determination of the degree of the crime should be supported by competent evidence, material and relevant to the question of degree, and only such evidence should be considered in arriving at that determination. In the present case, the state contends that the testimony given by the witnesses Ponciano, Phillips, and Ryan, relative to crimes previously committed by the defendant, was competent and relevant to show the motive and intent of the defendant in shooting Captain Geach—that the motive and intent were to kill the officer to prevent arrest and punishment for the prior crimes referred to. The state also urges that the evidence referred to was competent and relevant to aid the court in determining the penalty. As to its admissibility to determine the penalty, the rule is well settled that the prior record of the accused may be considered. 3 Wharton Crim.Proc. (10th Ed.) sec. 1890, p. 320, and cases cited; People v. Popescue, 345 Ill. 142, 177 N.E. 739,

77 A.L.R. 1199. As to the admissibility of such evidence on the question of the degree of murder, it is admissible if it tends to prove motive and is not too remote in time for that purpose. People v. Wheaton, 64 Cal.App. 58, 220 P. 451; People v. Middleton, 65 Cal.App. 175, 223 P. 448; People v. Slater, 199 Cal. 357, 249 P. 177; Copeland v. United States, 55 App.D.C. 106, 2 F.2d 637. The robbery of Highway 40 Tavern was the immediate occasion of the search for the defendant and his companion, and was the immediate and most potent cause for the fear of arrest and of the motive to resist and escape. The prior offenses related by the witnesses would naturally contribute to the defendant's state of mind in that regard, each prior offense contributing in proportion to its seriousness and nearness in time. Only twenty-five days had elapsed since the defendant's escape from the Washington Reformatory, which escape was followed by most of the offenses put in evidence. Some earlier offenses were shown in the testimony, on cross-examination, of Chief of Police Phillips that "He stated, previous to his incarceration in the Reformatory at Monroe, Washington, he had been involved in numerous car thefts and armed robberies, during one of which he shot a Tacoma groceryman." In varying degrees, these prior crimes of the defendant contributed to his fear of arrest and punishment and to his motive for resisting.

Assuming for the moment that a portion of the evidence as to prior crimes was incompetent as being too remote to prove the motive of the defendant, we are of the view that such proof, in the present case, was not prejudicial to the defendant. In the case of People v. Popescue [345 Ill. 142, 177 N.E. 745], above mentioned, the court, in considering a situation similar to that presented here, said: "Even if it should be assumed that the evidence of the murder committed by these defendants three hours before they murdered Merrill was incompetent this was a hearing before the Court without

a jury, and the Court is supposed, as in chancery cases, to disregard all evidence heard except that which is competent and relevant to the issue. Mix v. People, 116 Ill. 265, 4 N.E. 783; Gordon v. Reynolds, 114 Ill. 118, 28 N.E. 455; Coffey v. Coffey, 179 Ill. 283, 53 N.E. 590. Certainly no good reason can be assigned why a judge, often sitting as chancellor in chancery cases, should part of the time be said to possess legal discernment enough to sift out the competent and disregard the incompetent evidence but when determining the degree of punishment in a criminal matter not be able to exercise the same ability."

As stated by the Supreme Court of California in the case of People v. Gilbert, 1943, 22 Cal.2d 522, 140 P.2d 9, 12, "A hearing for the determination of the degree of an offense and the punishment therefor is not a trial in the full technical sense, and is not governed by the same strict rules of procedure as a trial."

 While the separation of the hearing into two parts might aid, in some cases, in preventing a misapplication of the evidence, we are of the view that the statute does not require the judge to so divide the hearing. Under the statute, the judge is authorized to hear all of the evidence which is competent and relevant either to the degree of the crime or to the penalty to be imposed, and then to pronounce his determination as to the degree and the penalty. If it affirmatively appeared, from the language of the judge's decision, that, in arriving at this determination on the degree of the crime, he had been influenced by the proofs as to the prior offenses, the additional problems as to remoteness and as to actual prejudice would be presented. The language of the judge's decision is as follows:

"Upon a review and a study of the evidence in this case and particularly the circumstances connected with the killing, one thing is outstanding. That is, there was not a fight. There were no circumstances to provoke this. It was over in a matter of seconds and it was done

when two officers of the law were carrying out their duty.

"The words that were uttered by this defendant, after the two men had been killed, impresses the Court. An officer had shot the defendant. He said, 'I am hit. I am through.' And that is significant to the Court. It indicates to the Court if he had not been hit he would not have been through.

"Another thing that is significant in this case is the fact that the defendant went to bed with a gun under the covers. That gun was there, there for a purpose. As I recall the testimony of Mr. Phillips, he stated this, that at the time that this defendant made his statement to him on November 20th, the defendant said he went back to the room and he went to bed, and the next thing he knew there were two officers beside his bed. I do not recall anything with regard to him being asleep or awakening and seeing the two officers beside his bed. Also, do we find one shot being fired? No, in this case we have found, by the testimony of Dr. Parsons, that seven shots were fired and, in the opinion of the Court, this showed the wilful and deliberate and premeditated murder and, in addition to that, a coldblooded and a ruthless disregard for life. In fact, it may be referred to as a wholesale slaughter. These men were shot down in the performance of their duty."

The judge, after confining himself to the facts and circumstances surrounding the murder, said "this showed the wilful and deliberate and premeditated murder and, in addition to that, a cold-blooded and a ruthless disregard for life." Here is a complete finding of murder of the first degree. From the language of the judge, strengthened by the presumption as to a proper application of the evidence, a strong inference arises that the finding, and the determination as to degree which followed, were based solely on the facts and circumstances surrounding the murder, the res gestae of the case. The judge then proceeded, as we view it, to

the consideration of the penalty, using the following language:

"It is astounding to this Court, from the testimony which has come in here, how a youth could have launched on such a determined and deliberate career of crime. Every move that has been made by this defendant in the last few months, from the time he escaped from the reformatory until he was arrested, was the commission of a felony, either a robbery or a shooting. Does this indicate that he has any regard at all for society, for law or order, or for life and the property of others? To the Court, it shows a complete disregard for all.

"It is, therefore, the finding of this Court that this defendant is guilty of murder of the first degree, and that the murder so committed was wilful, deliberate and premeditated."

The judge then proceeded to the formal pronouncement of judgment and fixing of the penalty.

If we entertain, for the moment, the view urged by defendant that inadmissible evidence of prior crimes was considered by the trial judge in arriving at the degree of murder, we are obliged to apply to the case section 11266 of Nevada Compiled Laws, which is as follows: "No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right."

An application of the section referred to was made by this court in the case of the State v. Skaug, 63 Nev. 59, 161 P.2d 708, 711. In that case, evidence of prior crimes was received. The case was tried before a jury. This court, speaking through Mr. Justice DUCKER, said:

"But in view of our statute and the nature and

conclusiveness of the evidence, it does not follow that allowing the jury to consider the other offenses constituted reversible error. The evidence presents a case that calls loudly for the extreme penalty.

\* \* \* \* \* \* \*

"An error of the injurious consequences mentioned in the statute must appear affirmatively to warrant a reversal in any case. State v. Willberg, 45 Nev. 183, 200 P. 475; State v. Williams, 47 Nev. 279, 220 P. 555; State v. Ramage, 51 Nev. 82, 269 P. 489."

■ The admissible evidence received in the present case and not controverted in anyway by defendant, amply justified the judgment of murder of the first degree and the death penalty. We are satisfied that the admission of the evidence of prior offenses was not prejudicial to any right of the defendant.

■ Defendant's third assignment of error reads as follows: "The Appellant was denied his constitutional right to an early trial by failure of Judge Wines to proceed with the hearing when Appellant had his witnesses present."

In support of this assignment, defendant relies on section 10654 of Nevada Compiled Laws, which provides that, in a criminal action the defendant is entitled to a speedy trial. Defendant's plea of guilty was entered on December 22, 1947. On the following day the defendant had present in the courtroom certain witnesses to testify in his behalf, and demanded a hearing on that day. Judge Wines, at that time, declared his disqualification and stated that the case would be assigned to another judge. On the 26th, the order of assignment to Judge Brown was made. On the 27th, Judge Brown set the hearing for the determination of the degree of the crime and the penalty, for January 5, 1948. The hearing was held on January 5th, 6th, and 7th. Under the previous rulings of this court, we are satisfied that the defendant was not deprived of a speedy trial. State v. Squier, 56 Nev. 386, at page 399, 54 P.2d 227, and cases there cited. The testimony of the defendant's witnesses referred to

could have been perpetuated, under the provisions of the statute, had the required steps been taken by defendant for that purpose.

Defendant's fourth and last assignment of error is as follows: "Judgment was rendered in less than six hours contrary to Sec. 11041, N.C.L.1929."

Section 11041, Nevada Compiled Laws, relied on by defendant, reads as follows: "The time appointed.shall be at least two days after the verdict, if the court intend to remain in session so long; or, if not, as remote a time as can reasonably be allowed. But in no case shall judgment be rendered in less than six hours after the verdict."

It has been held in California, under statutes similar to ours, that the elapsing of time between judgment and sentence is not required on a hearing to determine the degree of murder and the sentence thereon. People v. Noll, 20 Cal. 164. We follow that rule.

No error appearing in the record, the order of determination of the district court determining the crime of appellant to be murder in the first degree, and the judgment appealed from, are affirmed, and the district court is directed to fix the time of and to make the proper order for the carrying into effect, by the warden of the state prison, of the judgment rendered.

HORSEY and BADT, JJ., concur.

EATHER, C. J., being absent on account of illness, the Governor commissioned Honorable WM. D. HATTON, Judge of the Fifth Judicial District, to sit in his place.

## ON PETITION FOR REHEARING

December 20, 1948. 200 P.2d 698.

426

For original opinion, see 65 Nev. 405, 198 P.2d 280.

*Ernest S. Brown,* of Reno, for Appellant.

*Alan Bible,* Attorney General, *Homer Mooney,* Assistant Attorney General, and *Harold O. Taber,* District Attorney, and *Grant L. Bowen,* Assistant District Attorney, both of Reno, for Respondent.

## OPINION

By the Court, HATTON, District Judge:

In his petition for rehearing, the defendant contends, as heretofore, that the statutory hearing to determine the degree of murder was a trial in the general

sense, that the trial commenced on the entering of the defendant's plea of guilty and before the taking of testimony began, that the defendant's jeopardy arose on the entering of his plea of guilty, and that the assignment of the case after plea, by Judge Wines to Judge Brown, constituted a mistrial and an acquittal of the defendant. The defendant contends, in substance, that his plea of guilty extended to the charge as of murder only, with an implied denial of guilt as to murder with deliberation and premeditation, or of the first degree. Upon this theory of the situation, the plea was, in part, a plea of not guilty as to deliberation and premeditation. Upon a plea of not guilty, jeopardy arises only at the commencement of the trial. In this case, we have held that the "trial," or hearing commenced with the presentation of evidence, and not upon the entering of the plea. As held in State v. Ceja, 53 Nev. 272, 298 P. 658, 2 P.2d 124, the hearing is not such a trial as to accord to the defendant the right to a jury. In the present case, the defendant was not denied the established rights under the doctrine of double jeopardy. Even if the hearing were a trial in the full sense, which we do not hold, the defendant incurred only one jeopardy.

██ Under N.C.L. section 8407, a judge must assign a case in which he is disqualified under the terms of the section. Defendant argues, in substance, that a judge must not assign a case unless he is so disqualified. We do not believe that defendant's conclusion is a logical inference from the language of the law. The purpose of the provision is in the furtherance of justice by preventing a judge who may be biased from conducting a trial. The statute does not imply that a judge must try all cases which come before him unless he is so disqualified. Many assignments of cases have been, and currently are, made in accordance with our interpretation of the rule. Though not essential, it was proper for Judge Wines to state his reasons for making the assignment.

We adhere to our view as to the portions of the evidence on which the judge relied in arriving at the degree of the crime and the portions on which he relied on the fixing of the penalty.

■ ■ The evidence of prior crimes was not offered, in the present case, because of any similarity between such crimes and the crime charged here, but to show fear of arrest and intent to resist. It went to the motive. State v. White, 52 Nev. 325, 285 P. 503; State v. Larkin, 11 Nev. 314. The commission of such offenses need not be proved beyond a reasonable doubt; the evidence need only tend to prove the accused guilty thereof. 22 C.J.S., Criminal Law, sec. 690, page 1112.

Rehearing denied.

HORSEY and BADT, JJ., concur.