## STATE *v*. ACOSTA

No. 2706

January 12, 1926.                    242 P. 316.

1. HOMICIDE—EVIDENCE HELD TO AUTHORIZE FINDING THAT DEFEND-
ANT KNEW THAT DECEASED WAS AN OFFICER.

In prosecution for murder of a police officer when arresting
defendant, evidence *held* to authorize finding that defendant
knew that deceased was an officer.

2. HOMICIDE—CHARGE, STATING ELEMENTS NECESSARY TO CONVICT
DEFENDANT OF "MURDER IN FIRST DEGREE," HELD NOT MISLEAD-
ING.

Charge that to convict defendant of "murder in first degree"
killing of deceased must have been willful, deliberate, and
premeditated, and that such design to kill was formed at or
before time of killing, *held* not misleading, since jury must
have understood that design to kill must have been formed as
result of deliberation and premeditation.

3. HOMICIDE—ON RESISTANCE OF ARREST, INSTRUCTION, BASED ON
STATUTE, HELD NOT ERRONEOUS, IRRESPECTIVE OF CONSTITUTION-
ALITY.

In prosecution for murder of police officer when arresting
defendant, instruction, based on Stats. 1923, c. 165, sec. 1,
making it unlawful for any person to loiter in any public
place, while under influence of liquor, *held* not erroneous,
irrespective of whether such statute is unconstitutional, since
an officer has right to presume that a statute is valid, and it
being duty of one arrested to submit and raise constitutionality
of statute pursuant to which he is arrested in a tribunal
organized to determine such question, and not to constitute
himself a court to settle question.

4. HOMICIDE—COURT NOT REQUIRED TO INSTRUCT THAT DEFENDANT
KNEW, OR HAD SUFFICIENT REASON TO BELIEVE, THAT DECEASED
WAS AN OFFICER.

In prosecution for murder of police officer when arresting
defendant while in act of committing an offense, court *held*
not required to instruct that defendant knew, or had sufficient
reason to believe, that deceased was an officer, in view of
Rev. Laws, secs. 6953, 6954, 6958, since arresting officer did
not have to make his authority known.

5. HOMICIDE—INSTRUCTION NOT ERRONEOUS AS TAKING FROM JURY
QUESTION WHETHER DEFENDANT, IN KILLING DECEASED, ACTED
IN NECESSARY SELF-DEFENSE.

Instruction on duty of person to submit to arrest, and that
if defendant, while legally under arrest, and in an attempt to
resist arrest or confinement in jail, shot and killed deceased
officer, he would be guilty of murder, *held* not erroneous as
taking question from jury whether defendant in killing deceased
acted in necessary self-defense.

6. CRIMINAL LAW — DUTY OF DEFENDANT TO REQUEST DESIRED
INSTRUCTION.

It was duty of defendant, if he desired an instruction
whether, in killing a police officer, he acted in necessary self-
defense, to request it.

7. HOMICIDE—FAILURE TO INSTRUCT WHETHER DEFENDANT, IN KILL-ING DECEASED, ACTED IN SELF-DEFENSE, HELD NOT PREJUDICIAL UNDER EVIDENCE.

In prosecution for murder of police officer, failure to instruct whether defendant, in killing deceased, acted in necessary self-defense, *held* not prejudicial under evidence.

8. HOMICIDE—WHETHER DEFENDANT ANIMATED BY MALICE IN KILL-ING POLICE OFFICER HELD FOR JURY.

In prosecution for murder of police officer while making arrest, whether defendant was animated by malice *held* for jury.

See (1, 2, 3, 4, 5, 6, 8) 29 C. J. sec. 72, p. 1098, n. 74; sec. 79, p. 1104, n. 39; 30 C. J. sec. 257, p. 77, n. 42; p. 78, n. 57; sec. 556, p. 308, n. 19; sec. 559, p. 312, n. 42; sec. 574, p. 326, n. 88; sec. 601, p. 348, n. 2; sec. 617, p. 366, n. 5; sec. 618, p. 368, n. 19; sec. 628, p. 383, n. 3; sec. 646, p. 402, n. 78; sec. 718, p. 451, n. 21; (7) 16 C. J. sec. 2499, p. 1058, n. 29; 17 C. J. sec. 3593, p. 255, n. 53.

APPEAL from Fourth Judicial District Court, Elko County; *J. M. McNamara,* Judge.

Gaudalupe Acosta was convicted of murder in the first degree, and he appeals. **Affirmed. Rehearing denied.**

*E. P. Carville,* for Appellant:

As malice was not shown, appellant should not be convicted of greater crime than manslaughter. Peace officer, even when arresting person who commits crime in his presence, should state official character and authority on demand after person has submitted. Where person sought to be arrested acts in good faith in demanding authority and resists arrest upon refusal of arresting person to give it, honestly believing other is making unauthorized assault, and arresting person makes demonstration with deadly weapon, killing is justifiable. Malice and passion may coexist, but express malice and irresistible passion cannot. State v. Salgado, 150 P. 764; 3 Cyc. 889.

It is impossible for premeditation to be formed at instant act was committed; premeditation implied design formed prior to act, though interval be brief. State v. Salgado, supra.

Instruction that it is unlawful to loiter in any public place while under influence of liquor (Stats. 1923, 281) is unconstitutional for uncertainty as to degree of

intoxication, and prejudicial as leading jury to believe appellant was drunk to extent of being nuisance.

Instruction that where person has right to arrest, other has no right to resist as two rights cannot coexist is incomplete. It took from jury right to consider questions as to whether appellant knew officer's character or authority, whether there was premeditation and deliberation, and hence what was degree of offense, if any, and as to whether cirsumstances of killing showed justifiable self-defense.

*M. A. Diskin,* Attorney-General, and *W. T. Mathews,* District Attorney, for the State:

Defendant knew deceased's official character. It was unnecessary for officer to state it. Rev. Laws, 6958; Clark Crim. Pro. (2d ed.) 58.

Malice was circumstantially proved. It is implied where circumstances show abandoned and malignant heart. Brill Crim. Law, sec. 631; State v. Salgado, 38 Nev. 64, 413.

Conviction of first degree murder does not depend alone on showing of malice. It is inadequate to justify killing or reduce it to manslaughter that officer does not show authority or arrest is apparently illegal. People v. Stirgios, 136 P. 955; People v. Gillman, 190 P. 205.

Trend of decisions from early English times to present is that killing of peace officer while exercising powers incident to his office under circumstances indicating felonious killing is murder, irrespective of whether malice is shown. If in resisting, more force than is necessary is used, or if deadly weapon is unnecessarily used in first instance, prisoner is aggressor and killing is murder. State v. Taylor, 67 A. S. R. 648; 13 R. C. L. 869.

Length of time for deliberation is not essential element in murder in first degree. State v. Millian, 3 Nev. 409; Ah Mook, 12 Nev. 369.

Omission of essential element in one instruction is not fatal if given in another. 6 Nev. 265; 12 R. C. L. 817.

Public drunkenness is nuisance at common law and

by statute. 2 Brill Crim. Law, sec. 1743. Officer had right to enforce statute, even though unconstitutional. Neither officer nor defendant can decide that question. Keady v. People, 74 P. 892.

Resistance to rightful arrest is crime. Killing officer then is homicide. Self-defense does not arise therein. 13 R. C. L. 866.

## OPINION

By the Court, COLEMAN, C. J.:

The defendant was convicted of murder in the first degree and appeals from a judgment inflicting the death penalty.

The first point urged is that the defendant could not, under the evidence, be legally convicted of a crime greater than manslaughter, even though the jury might have concluded that he did not act in self-defense. This contention is based upon the rule stated in 13 R. C. L. p. 872, reading:

"Within the rule that one who kills an officer, while the latter is lawfully attempting to effect his arrest, is guilty of murder, it is true, generally speaking, that to constitute the acts of the officer lawful he must disclose his official character and the authority under which he assumes to make the arrest. * * * Where a person sought to be arrested acts in good faith in demanding the authority of the person attempting the arrest, and in resisting the arrest upon refusal to state it, honestly believing the other person is making a totally unauthorized assault upon him, and the other makes the first demonstration with a deadly weapon, thus putting him in danger of life and limb, the killing of him may be justifiable."

On the evening of March 2, 1925, about 9 o'clock, the defendant, who had been employed on the Western Pacific Railroad, arrived in Elko and went to the West Hotel, where he engaged a room, and thereafter went to a cafe to get something to eat. After leaving the cafe, he was seen loitering on the sidewalk by the officers Capriola and Lewis, in a drunken condition, and

indulging in profanity, which is an offense under our statute. Officer Capriola spoke to and told defendant to go to bed. The officers continued up the street and were overtaken by the defendant, who walked between them for a short distance, still under the influence of liquor and indulging in profanity. Officer Capriola again ordered the defendant to go to his room and go to bed. The defendant then replied, "To hell with you fellows." Officer Lewis thereupon spoke for the first time, saying, "Well, if you don't want to go to bed, we will put you to bed," and took the defendant by the arm and started to the county jail with him. The defendant was first warned about midway the block in which is the post office, on the main street of Elko, and the arrest took place at the Henderson Bank corner, one of the most prominent points in the city. Officer Lewis, in taking the defendant toward the jail, crossed the street diagonally, reaching the opposite side at about the intersection of Fifth Street, and then proceeded up the center of Fifth Street for a distance, angling toward the east side of the street as he approached the next street, on which is the jail. It was near the intersection of the next street at which officer Lewis was shot by the defendant; three bullets having penetrated his body. The theory of the defense is that defendant did not know that Lewis was an officer, and that he was under arrest, and that he thought Lewis was taking him to a dark place to rob him, and that, when they reached the point where the shooting took place, Lewis assaulted him, and that he shot in self-defense.

While officer Capriola did not testify that either of the officers told the defendant, in his presence, that they were officers, or that he was under arrest, he testified that Lewis wore an officer's star, which could be easily seen, of which there is ample evidence; that he had seen the defendant in Elko numerous times; and that on at least one occasion the defendant was present when he had ordered several Mexicans to mend their ways. There is also in evidence a statement of the defendant, made the morning after the shooting, in which he said that Lewis told him he was a policeman.

1. We would be amply justified in saying that, though the defendant denied on the stand knowing that Lewis was an officer or making the statement in evidence, and testified that he was assaulted without provocation, and, as he thought, with the view of robbery, the jury having heard all of the evidence, and there being ample evidence to support the verdict, we would simply let the matter rest upon such verdict without comment. Since, however, this is a capital case, we may say we cannot see how the jury could have reached any other conclusion than that the defendant knew that Lewis was an officer. He was arrested about 10 o'clock. Prior to his arrest he was ordered twice to go to his room by one of the two officers. This alone was enough to indicate to his mind that they were officers, or at least not set upon robbery, for, if they had designed robbery, they would have given no such orders. Could he reasonably have inferred that Lewis, who took him by the arm and marched him across the street at 10 o'clock at night, at the main street of the town had conceived the idea of robbery after leaving Capriola? If the defendant had such an idea, he could have appealed to the witness McCulloch, who crossed Fifth Street within a few feet of the defendant and Lewis; but, instead of doing so, according to McCulloch, the defendant was "talking rough." If he had thought he was in the hands of a highwayman, the most natural thing for the defendant to have done would be to appeal to McCulloch. He did not do this. We are satisfied that the jury reached the right conclusion in rejecting the contention of the defendant.

It is next contended that the court erred in giving instruction No. 19, which reads:

"The court instructs you that while the law requires that the killing, in order to constitute murder in the first degree, shall be willful, premeditated, and deliberate, still it does not require that the willful intent, premeditation, or deliberation, shall exist for any prescribed length of time before the crime was committed; it is sufficient that there was a determination and design to kill, distinctly formed in the mind at any moment before or at the time the shot was fired. And in this

case, if the jury believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed deceased, as charged, and that at the time or before the shot was fired the defendant had formed in his mind, a willful, premeditated, and deliberate design or purpose to take the life of the deceased, and that the shot was fired in furtherance of that design or purpose, and without any justifiable cause, or legal excuse therefor, as explained in these instructions, then the jury should find the defendant guilty of murder in the first degree."

The portion of the instruction particularly complained of is the emphasized words in the following:

"It is sufficient that there was a determination and design to kill distinctly formed in the mind at any moment before, *or at the time the shot was fired,*" with special stress upon the words emphasized.

The objection urged to the language in question is that—

"It would be a physical impossibility for premeditation to be formed in the mind at the instant the shot was fired, because premeditation necessarily means that a design must have been formed at some time prior to the time the shot was fired, even though it be short."

2. Our statute provides that the willful, deliberate, and premeditated killing of a human being with malice aforethought shall be murder in the first degree. By the instruction the court charged the jury that in order to convict the defendant of murder in the first degree, they must find that the killing of the deceased was willful, deliberate, and premeditated, and that such design to kill was formed at or before the killing. We do not think the instruction was misleading or confusing. The jury must have understood from the entire instruction that the design to kill must have been formed as the result of deliberation and premeditation. This is all that the law contemplates. The language complained of was used in an instruction given in the case of State v. Ah Mook, 12 Nev. 369, and is often given. It met with approval in 2 Brickwood Sackett on Instructions (3d ed.), p. 1884. The defendant was in no way prejudiced.

3. It is next contended that the court erred in giving instruction No. 23, which reads:

"You are instructed that, under the laws of this state, it is unlawful for any person to loiter in any public place, or on any public sidewalk, street, road, or highway, while under the influence of liquor."

This instruction is based upon section 1, c. 165, p. 281, Stats. 1923. It is said that the statute is unconstitutional. Our attention is not directed to any provision of the constitution of which it is said the statute is violative, and we can see no theory upon which the contention can be sustained. But, if the statute were unconstitutional, the defendant could not profit thereby. An officer has a right to presume that a statute is valid and it is the duty of one when being arrested or when under arrest to submit, and raise the constitutionality of the statute pursuant to which he is arrested in a tribunal organized to determine such a question, and not to constitute himself a court to settle the question. Keady v. People, 32 Colo. 57, 74 P. 892, 66 L. R. A. 353.

It is next contended that the court erred in giving the following instruction:

"Every person is bound to submit to the ordinary course of justice, and, while an officer in making a lawful arrest, should use no unnecessary violence, it is his duty to make the arrest, and the law clothes him with power to accomplish that result and imposes upon him the duty to overcome all resistance; the means being coextensive with the duty, except to take life itself where the arrest is for a misdemeanor.

"Every case where one person has a right to arrest or restrain another, the other can have no right to resist, since the two rights cannot coexist; and, where a person having the right to arrest another is killed by the latter, in the resistance of such arrest, the resistance is a crime, and the killing is a homicide in the commission of an unlawful act. No right of self-defense can arise out of such circumstances.

"If, therefore, you find from the evidence, beyond a reasonable doubt, that deceased was an officer, and that

defendant while legally under arrest and while being taken by deceased to the county jail, in an attempt to resist arrest or confinement in jail, shot and killed deceased, then you are instructed that defendant would be guilty of murder."

4. It is said that this instruction was prejudicial because it took from the jury the right to determine whether the defendant acted in necessary self-defense, and also eliminated the question whether the defendant knew or had sufficient reason to know that the deceased was an officer. Section 6953, Rev. Laws, provides that a peace officer may make an arrest, without a warrant, for a public offense committed in his presence. Section 6954 provides that a private person may make an arrest for a public offense committed in his presence, and section 6958 provides that the person making the arrest must inform the person to be arrested of his intention to arrest him, of the cause of the arrest, and the authority to make it, except where the person to be arrested is actually engaged in the commission of or an attempt to commit an offense. In the instant case the defendant was arrested while in the act of committing the offense; hence the arresting officer did not have to make his authority known. In view of this situation, there was no occasion for an instruction that the jury find that the defendant knew or had sufficient reason to believe that the deceased was an officer, though there is ample evidence to justify the conclusion that he knew that Lewis was an officer and that he was under arrest as we have pointed out.

5-7. As to the first contention, we do not think the instruction took from the jury the question whether the defendant, in killing the deceased, acted in necessary self-defense. It is true the court did not instruct on that point, but it was the duty of the defendant, if he desired such an instruction, to request it. This was not done. In this connection we may say that, from a reading of the entire testimony, we are clearly of the opinion that the defendant was in no way prejudiced because of the failure to instruct on the point made.

8. It is next said that, to justify the verdict, it was necessary for the state to prove that malice existed in the mind of the defendant at the time of the shooting, and that there is no evidence in the record to sustain such a finding. In support of the contention that no malice was shown, it is said that the defendant did not know the officers, and naturally could have had no malice or feeling against them. It is also said that the fact that the defendant walked along the street with the officers tends to show that he entertained no feeling or malice toward the officers. We have no reason to believe that the defendant had any feeling whatever toward the officers prior to his arrest, but that is no sign that he may not have been prompted by malice at the moment of the killing. The undisputed testimony of the witness McCulloch is that the defendant was "talking rough" to Lewis when they were crossing the street, and it is more probable than otherwise that he became more enraged as he neared the jail. However, our statute provides that malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart. The jury was properly instructed, and it was their peculiar province to determine if the defendant was animated by malice. We think there is ample evidence to sustain the verdict.

Finding no prejudicial error in the record, the judgment and order appealed from are affirmed, and the district court is directed to make the proper order for the carrying into effect by the warden of the state prison the judgment rendered.

### ON PETITION FOR REHEARING

March 15, 1926.

*Per Curiam:*

Rehearing denied.