## THAYNE H. ARCHIBALD, APPELLANT, v. STATE OF NEVADA, RESPONDENT.

No. 4330

June 19, 1961        362 P.2d 721

*Alexander A. Garroway* and *Robert Leland,* of Reno, for Appellant.

*Roger D. Foley,* Attorney General, *William J. Raggio,* District Attorney, and *Herbert F. Ahlswede,* Deputy District Attorney, Washoe County, for Respondent.

## O P I N I O N

By the Court, McNAMEE, J.:

Appellant pleaded guilty to murder and after a hearing by a three-judge court to determine degree and punishment pursuant to NRS 200.030, the court concluded

that appellant was guilty of murder in the first degree, fixed the penalty at death, and entered its judgment accordingly.

Appeal is from such judgment.

The evidence presented at the hearing showed that appellant on August 26, 1959 robbed one Waters, a 17-year old service station attendant, in Livermore, California, kidnaped him and drove him east of Sparks, Nevada, where appellant killed him by shooting him in the back of the head. Thereafter, appellant stretched the victim out on the ground and shot him again in the back of the head to make sure he was dead. The evidence was mainly obtained from confessions of appellant and from his oral testimony in court.

It is not contended that the confessions were involuntary nor is the sanity of appellant questioned on appeal. His counsel argues, however, that the killing was an impulsive act and that there was not a sufficient showing of premeditation.

One version of the shooting as given by the appellant is that when the car stopped east of Sparks, the victim suddenly bolted from the car and started to run; appellant then, without thinking, impulsively shot at Waters. The other version given by him was that appellant took Waters up to a narrow ledge off the road where, after giving some thought to the situation, he determined to and did kill Waters by shooting him twice.

A letter written by appellant after his apprehension to Mr. Raggio, the district attorney, in itself establishes premeditation:

"Mr. Razzo, you hurt my feelings today. I also discovered that there is a squawk box planted in the jail. You also crushed my ego when you cut up the idea of me writing my little book to convince the public that I am only a misjudged good kid.

"I like you, Razzo. You have got class and a smart way of getting a defenseless kid like me to melt like butter. You are too easy and considering. No kidding, I really like you. I guess I admire you. I like the Assistant D.A. He is a little strict but he is all right. Two people I should fear but I like you.

"I tell you what, my whole life has been centered around writing that book 'A Teenage Desire'. It has been the plot of my life. Seriously, Razzo, I lived and breathed so I could write it. I have lived and dreamed, robbed and murdered. Then what happened? You laugh at me. I got back here to the jail and blew my top. I said things I never meant in the least. Tried to make an impression on the boys. Sure, it is silly. I am smart enough to realize it. I act dumb sometimes.

"Look, Mr. Razzo, you have got the story all wrong. Very little of it is the truth. I lied a lifetime just so I could write all the facts, write the truth, be the hero in my book. I studied day and night while I was in prison so I would be prepared for my exit, be the brave one and know all the answers. What happens? A stiff-collared, smooth-talking D.A. breaks my back. You should feel real good. Appreciate your character, because you and Janice (my girl friend) are the only people who have been able to get the truth out of me.

"Your lie detector test don't work with me. I can control my blood pressure and temperatures enough to make your machine mad. I wouldn't take one anyway. They are silly and embarrassing.

"Know something, Mr. Razzo, if I had taken the time to get rid of those empty cartridges by the body and got rid of the gun and kept my mouth shut you people would have never had connected me with that murder in a million years. You have got to give me that much credit. I planned this to the split second. And I only goofed when I left the empty shells by the body.

"This was premeditated murder because I was planning to collect ransom. And if you want the story and no bull shit or no lies I will talk. But I want out of this cell. And if you are good enough to do that I will play ball. It is really a remarkable story and every detail fits to a 'T'. Think it over. Archibald."

Although the various confessions differ in some respects, particularly with reference to what took place immediately prior to the shooting, any one of them was sufficient to justify the court in finding murder in the

first degree. Furthermore, under NRS 200.030 murder which is committed in the perpetration of a robbery is deemed murder in the first degree. As in State v. Fouquette, 67 Nev. 505, 221 P.2d 404, the homicide in this case took place during the perpetration of a robbery and a kidnaping.

Appellant assigns the following errors in his brief on appeal.

1. Three photographic exhibits were received in evidence over objection which portrayed the portion of the ledge where the body was found. They were offered for the purpose of showing where the district attorney had found a used cartridge which later was identified as having been fired from appellant's automatic pistol. The main objection to this evidence was that the cartridge was not found until September 14th although death had occurred August 26th. This objection is without merit inasmuch as the cartridge itself was admitted into evidence without objection. The interval of time, in any event, would affect merely the weight and not the admissibility of the evidence.

2. Two of the confessions given by appellant were taken down in question and answer form and were introduced as one exhibit through the testimony of an official court reporter, Richard Tuttle. He testified that the transcribed notes correctly and accurately stated verbatim the conversations, one of which was with District Attorney Raggio and the other with Assistant District Attorney Gezelin. Appellant's objection to this evidence was based on the fact that appellant had not signed the transcript.

In State v. Boudreau, 67 Nev. 36, 51, 214 P.2d 135, 142, this court said: "The general rule is that a confession is admissible although not in the exact words of the accused, where it was read by the accused and signed or otherwise admitted by him to be correct." In the present case, appellant upon order of court received a copy of the exhibit and was given the opportunity to read the same before the hearing. He acknowledged that

the statements were made by him and he did not dispute their accuracy. The confession had been made in Tuttle's presence. He could have testified from memory. A fortiori Tuttle's written report of the same would be admissible.

On oral argument appellant's counsel made further objection to the exhibit on the ground that the confession therein to Gezelin was a repetition of Gezelin's oral testimony already in evidence. Counsel expressly stated that his objection was not based on the ground that the evidence was cumulative. He argued that by having such evidence in written form it could be taken into the jury room when the jury retired for deliberations. Although the same could be true also with respect to that part of the exhibit containing the confession to Raggio, counsel freely admitted that the Raggio part of the exhibit was properly in evidence even though it could be taken by the jury into the jury room. It is difficult to follow counsel's logic in such argument. Tuttle, as well as Gezelin, heard the confession to Gezelin and each was competent to testify regarding the same. As stated before, the fact that Tuttle's evidence of the confession was in written form did not make it inadmissible. Furthermore, this was not a trial before a jury, but a proceeding before the court after a plea of guilty. See Rainsberger v. State, 76 Nev. 158, 350 P.2d 995.

3. When appellant was apprehended in Baker, Oregon, it was for an armed robbery committed by him there some weeks after the shooting of Waters. The circumstances of his Oregon arrest were brought out by him on his direct examination. Thereafter, appellant objected to evidence of this independent crime being received through appellant's written statement given to the chief of police in Baker, Oregon. This evidence of an independent crime was properly received in order to aid the court in determining the punishment. State v. Blackwell, 65 Nev. 405, 198 P.2d 280, 200 P.2d 698. See also Anno., 77 A.L.R. 1211.

4. Appellant objects to the court's refusal to permit his stepmother to testify what Dr. Gorman, a Utah psychiatrist, had told her following his medical examination of appellant while appellant was a ward of the Utah Industrial School. The testimony was clearly hearsay and was properly rejected.

5. After appellant had been a ward of the Utah Industrial School he became an inmate of the Oregon State Penitentiary. Records of these institutions pertaining to psychiatric examinations of appellant were obtained. Doctors testifying at the hearing were permitted by stipulation to testify from said records, but the records themselves were excluded. Error is claimed in the failure to admit said records in evidence. The exclusion of these records was proper. They contained much hearsay and other matters immaterial to any of the issues herein. Appellant's counsel did not designate any particular parts of the records he desired in evidence. If the testimony of the doctors was inconsistent in any way with the records they could have been used for impeachment purposes, but they were not offered for impeachment. In fact they were offered during the direct examination of Dr. Brown, one of appellant's own witnesses, appellant's counsel stating at the time: "I offer them in connection with the testimony of this witness not as statements of facts but something on which he has based his opinion  *  *  *." These records contain evidence of appellant's prior felony conviction for grand larceny and his imprisonment of more than two years therefor, his juvenile criminal record, and his violations of army regulations while he was in the military service. The exclusion of these records could only have been beneficial to appellant.

No prejudicial error appearing, the judgment is affirmed.

Inasmuch as the Honorable Richard R. Hanna, one of the judges who constituted the court which heard the

matter below, has resigned his office as district judge, the remaining two judges who constituted the court are directed to execute another warrant pursuant to NRS 176.440.

BADT, C. J., and THOMPSON, J., concur.