JOE ALLEN PAYNE, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 4898

October 25, 1965                    406 P.2d 922

*Dorsey & Harrington,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, *Edward G. Marshall,* District Attorney, and *Lois N. Bargmann,* Deputy District Attorney, of Clark County, for Respondent.

504

**OPINION**

By the Court, ZENOFF, D. J.:

This is an appeal from a conviction of first degree murder. Judgment was entered on November 5, 1964, and the defendant was sentenced to life in prison without possibility of parole. He assigns as prejudicial error the following:

1.   That the trial court erroneously instructed the jury on the felony-murder doctrine since, under the facts disclosed, that doctrine would not apply as the attempted felony (robbery in this instance) was terminated and the killing took place while the defendant was in the act of escaping.

2. That the trial court erred by instructing the jury as to the elements of first degree murder requiring a premeditated and deliberate killing.

On December 1, 1963, Kuk Gin Roe and his wife, Kum Ja Roe, went to the Western Union Telegraph Office in Las Vegas to wire the sum of $150 to California. Kuk Gin Roe had given his wife the money to hold. As she was standing there, the defendant, who had been waiting in the lobby of the Western Union Office, jumped at Mrs. Roe and grabbed the money out of her hand. She grabbed it back and the defendant took it again and threw Mrs. Roe to the floor. A struggle ensued in which her husband joined Mrs. Roe. It started inside the Western Union Office but continued out the door and in front of the building. At some point during this struggle, the defendant used a knife and stabbed the deceased twice, killing him. Thereafter, the defendant fled the scene and was later apprehended, at which time the police found in his possession a small part of a $100 bill that had been taken from Mrs. Roe. The other part of the bill and the remainder of the $150 which defendant had attempted to steal, had been retrieved by Mrs. Roe, but it is not clear at what point in the struggle with defendant she accomplished this.

1. Appellant contends that his attempt to commit the robbery had been interrupted and was terminated and that he was in the act of escape when the killing occurred. This, he claims, takes him outside the scope of the felony-murder rule and also beyond the scope of premeditation and deliberation. We do not agree.

The felony-murder rule simply stated is that any homicide, committed while perpetrating or attempting a felony, is first degree murder. This doctrine is contained in NRS 200.030 which defines degrees of murder.

"All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any kind of willful, deliberate and premeditated killing, or *which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery or burglary* \* \* \* shall be deemed murder of the first degree; and all other

506

kinds of murder shall be deemed murder of the second degree." (Emphasis added.)

NRS 200.380 defines robbery.[1]

The original purpose of the felony-murder rule was to deter felons from killing negligently or accidentally by holding them strictly responsible for the killings that are the result of a felony or an attempted one. People v. Washington, 44 Cal.Rptr. 442, 402 P.2d 130 (1965). In the majority of jurisdictions, such a homicide acquires first degree murder status without the necessity of proving premeditation and deliberation. The heinous character of the felony is thought to justify the omission of the requirements of premeditation and deliberation. Faced with the problem of determining when the underlying felony terminated for the purpose of applying the felony-murder doctrine, the courts have generally spoken in terms of the res gestae of the crime.

The point at which the crime was "perpetrated" or "attempted" has been subject to varying degrees and wide latitude. The great weight of authority appears to apply the principle of causation; that is to say, "Was there a break in the chain of events between the initial crime and the homicide?" Commonwealth v. Kelly, 337 Pa. 171, 10 A.2d 431 (1940). Such causation requires that the killing be linked to or part of the series of incidents so as to be one continuous transaction, thereby bringing it within the statutory felony-murder theory. Bizup v. People, 150 Colo. 214, 371 P.2d 786 (1962).

---

[1]NRS 200.380. "Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking, in either of which cases the degree of force is immaterial. If used merely as a means of escape, it does not constitute robbery. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear."

The res gestae of the crime begins at the point where an indictable attempt is reached and ends where the chain of events between the attempted crime or completed felony is broken, with that question usually being a fact determination for the jury. (See discussion in 51 Dick. L.Rev. 12 (1946)).

Our own court has subscribed to this rule: "When the homicide is within the res gestae of the initial crime, and is an emanation thereof, it is committed in the perpetration of that crime in the statutory sense." State v. Fouquette, 67 Nev. 505, 528, 221 P.2d 404 (1950).

"The res gestae embraces not only the actual facts of the transaction and the circumstances surrounding it, but the matters immediately antecedent to and having a direct causal connection with it, as well as acts immediately following it and so closely connected with it as to form in reality a part of the occurance." Id., at 529.

For example, our court has held that where the defendant robbed a service station attendant in California, kidnapped him, and drove him to Sparks where he killed his victim by shooting him in the back of the head, the homicide took place during the perpetration of the robbery. Archibald v. State, 77 Nev. 301, 362 P.2d 721 (1961). In State v. Williams, 28 Nev. 395, 82 P. 353 (1905), it was held that a homicide was committed in the perpetration of the robbery when it occurred after the robbery at another place approximately two miles distant.

In Fouquette, supra, the court pointed out that "Robbery, unlike burglary is not confined to a fixed locus, but is frequently spread over considerable distance and varying periods of time." Id., at 527.

"The 'perpetration' of the crime of robbery is not completed the moment the stolen property is in the possession of the robber. * * * The escape of the robber with his ill-gotten gains by means of arms is as important to the execution of the robbery as gaining possession of the property." Id., at 527 and 528.

Appellant asks this court to follow the example of the New York court in People v. Marwig, 227 N.Y. 382,

125 N.E. 535 (1919), which laid down a more restricted and limited rule to govern felony-murder. However, even if this court were to endorse that decision, it would not change our holding in this case. In People v. Marwig, supra, there was a clear break in the "chain of events" so that the robbery and killing were not part of one continuous transaction. The robbery took place within a jewelry store, the participants left, and the attempted apprehension by the store owner took place outside the building and up the block. That is not true in our case where there was one continuous struggle inside the building and out onto the sidewalk where the killing took place. The Marwig case is clearly not applicable to our factual situation.

To what extent this court could apply the fine line between escape or termination of the felony must be left to the facts and circumstances of each case. We have no difficulty agreeing with the lower court and jury here.

2. The appellant claims that there was no basis on which he could have been found guilty of first degree murder under NRS 200.030 which requires a "willful, deliberate and premeditated killing."

Whether a defendant was animated by malice, express or implied, is within the province of the jury. See Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964), State v. Acosta, 49 Nev. 184, 242 P. 316 (1926). Under NRS 200.020 malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

The Idaho Supreme Court ruled in State v. Snowden, 79 Idaho 266, 313 P.2d 706 (1957), that a knife can be classified as a deadly weapon by the use to which it is put and the results of its use. The court went on to point out that in the absence of circumstances disproving malice, malice may be presumed from the intentional use of a deadly weapon in a deadly and dangerous manner.

To make a killing deliberate as well as premeditated, it is unnecessary that the intention to kill shall have

been entertained for any considerable length of time. It is enough if there is time for the mind to think upon or consider the act, and then determine to do it. If, therefore, the killing is not the instant effect of impulse—if there is hesitation or doubt to be overcome, a choice made as the result of thought, however short the struggle between the intention and the act—it is sufficient to characterize the crime as deliberate and premeditated murder. (See Clark & Marshall on Crimes, Sec. 10.09, at 613.) In other words, one may be guilty of murder in the first degree although the intent to commit such a homicide is formed "at the very moment the fatal shot [is] fired." State v. Hall, 54 Nev. 213, 13 P.2d 624, 632 (1932). In this case, the court upheld an instruction that:

"The intention [to kill] may be ascertained or deduced from the facts and circumstances of the killing such as the use of a weapon calculated to produce death, the manner of the use, and the attendant circumstances characterizing the act." Id., at 632.

In the case at bar, the jury could have found a "deliberate" and "premeditated" killing from the following facts and course of conduct on the part of the defendant:

1.  The defendant drew a knife which was a deadly weapon.

2.  During the act of robbery he did not display the knife, so he had to make the decision to use it when the struggle ensued.

3.  He stabbed the victim twice in vital areas of his body where death could and did result.

We find the instructions on premeditation and deliberation proper.

The lower court is directed to give appellant's attorney the certificate specified in Subsection 3 of NRS 7.260 to enable him to recover compensation as provided in Subsection 4 of said statute.

Affirmed.

THOMPSON and BADT, JJ., concur.