130 Nev., Advance Opinion 10

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| DAVID SANCHEZ-DOMINGUEZ, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 58345 **FILED** FEB 27 2014 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon, aggravated stalking, and burglary. Second Judicial District Court, Washoe County; Steven R. Kosach, Judge.

*Affirmed.*

Richard F. Cornell, Reno,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Richard A. Gammick, District Attorney, and Terrence P. McCarthy, Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, PICKERING, J.:

First-degree felony murder occurs when a murder is "[c]ommitted in the perpetration or attempted perpetration of" certain

---

[1]Following oral argument, this matter was transferred from a panel to the en banc court pursuant to IOP Rule 13(b).

14-06402

felonies, including burglary. NRS 200.030(1)(b). In this appeal, we address the meaning of "in the perpetration or attempted perpetration of" a burglary, specifically, whether a killing must be caused by, and occur at the exact moment of, a burglar's entry into a protected structure. Because NRS 200.030(1)(b) holds felons strictly responsible for killings that result from their felonious actions, we affirm the judgment of conviction, even though the killing here occurred after the offense of burglary was complete.

## I.

David Sanchez-Dominguez married Maria Angustias Corona in 2002. Over the course of their seven-year marriage, Sanchez-Dominguez subjected Maria to physical and mental abuse. Maria attempted to leave Sanchez-Dominguez several times, but always returned. In September 2009, Maria again left Sanchez-Dominguez and moved into her mother's home. She also obtained a temporary protective order that forbade Sanchez-Dominguez from coming within 100 yards of Maria, her mother's home, or her place of work. Despite the protective order, Sanchez-Dominguez continued to pursue Maria.

On November 13, 2009, Sanchez-Dominguez drove to Maria's mother's home. He entered the home, uninvited, through the unlocked front door. Inside, he encountered several of Maria's relatives, including her mother, two cousins, and two brothers. Repeatedly, Sanchez-Dominguez asked for Maria and was told that she was not home. Maria's relatives told Sanchez-Dominguez to leave, but he refused. When Maria's cousin Jose moved toward the phone to call 911, Sanchez-Dominguez pulled a gun from the waist of his pants and told Jose not to move. He then pointed the gun at Maria's mother. Hearing the commotion, Roberto

Corona, Maria's brother, came downstairs. Upon realizing what was happening and seeing that Sanchez-Dominguez had the gun drawn, Roberto stepped between his mother and Sanchez-Dominguez and said, "if you're going to shoot, shoot." Immediately, Sanchez-Dominguez held the gun to Roberto's chest and fired a single shot, killing him.

The State charged Sanchez-Dominguez with burglary, aggravated stalking, and murder. The murder count was charged as willful, deliberate, and premeditated murder and, alternatively, as felony murder in the perpetration of burglary. After a seven-day trial, the jury found Sanchez-Dominguez guilty on all three counts. The jury then chose a sentence of life imprisonment without parole for the murder, and the district court sentenced Sanchez-Dominguez on the remaining counts.

Sanchez-Dominguez raises two issues on appeal, only one of which warrants extended discussion: Did the district court err by issuing an incomplete jury instruction regarding felony murder and rejecting the alternative instructions Sanchez-Dominguez proffered, thereby allowing the jury to base a first-degree murder conviction on the felony-murder theory predicated on a completed felony?[2]

---

[2]Sanchez-Dominguez also argues that the aggravated stalking charge should have been severed and tried separately because it was unrelated to the other offenses and highly prejudicial. The district court did not abuse its discretion in refusing severance. The record shows that Sanchez-Dominguez had an overarching plan to terrorize and control Maria that ultimately resulted in the burglary and murder. *See* NRS 173.115(2). Also, the evidence that Sanchez-Dominguez burglarized the home and killed Roberto was overwhelming, leaving little reason to believe the jurors convicted him of murder based on emotional outrage over the stalking, rather than admissible evidence regarding the murder.

## II.

In the district court, Sanchez-Dominguez's theory of defense was that the felony-murder rule did not apply because the underlying felony, burglary, was complete before the killing happened, and thus, the death did not occur "during the perpetration or attempted perpetration" of a felony. He offered three jury instructions consistent with his theory of the case:

> (1) Burglary is confined to a fixed locus in time. The crime of Burglary is complete at entry into a house where the necessary specific intent is also determined to exist at that same fixed locus in time. All matters following the burglary are not a part of the Burglary. Thus, any act of violence following the actual entry into a house cannot be an act done during the perpetration or attempted perpetration of a Burglary.
>
> Because the evidence in this case demonstrates that ROBERTO CORONA was killed after the defendant's entry into the house . . . , you may not consider the alternative theory of felony murder as a basis for conviction of First Degree Murder. That theory is therefore removed from your consideration.
>
> The only theory of First Degree Murder that you may consider is premeditated and deliberate murder as defined in these instructions.
>
> (2) In order to find that the defendant willfully and unlawfully killed ROBERTO CORONA in the perpetration or attempted perpetration of a Burglary . . . , you must find beyond a reasonable doubt that the killing occurred while the defendant was entering the house.
>
> (3) The offense of Burglary is complete upon entry of a house only when at the time the house

SUPREME COURT
OF
NEVADA

(O) 1947A

4

is entered, the defendant has the specific intent to commit assault or battery or coercion or kidnapping therein.

The district court rejected the proffered instructions on the grounds they did not accurately state the law.

Citing *Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005), Sanchez-Dominguez argues that defendants are entitled to have the jury instructed on their theory of the case. He urges that even if his proposed instructions were poorly worded, the district court had an obligation to provide the substance of the requested instructions to the jury. And because the district court refused to instruct the jury on the substance of his theory that the burglary ended before the murder, Sanchez-Dominguez maintains that the court violated his constitutional rights.

We review the district court's rejection of the proposed instructions for an abuse of discretion, keeping in mind that a defendant is not entitled to misleading, inaccurate, or duplicative jury instructions. *Crawford v. State*, 121 Nev. 744, 748, 754, 121 P.3d 582, 585, 589 (2005).

The first and second proposed instructions misstate the law regarding felony murder because the duration of felony-murder liability can extend beyond the termination of the felony. *See infra* § III(B). Thus, the district court had no obligation to give either instruction. *See Barron v. State*, 105 Nev. 767, 773, 783 P.2d 444, 448 (1989) ("if a proffered instruction misstates the law or is adequately covered by other instructions, it need not be given"); *see also Eddy v. State*, 496 N.E.2d 24, 27-28 (Ind. 1986) (affirming district court's rejection of defendant's completed-felony instruction). The third instruction is an accurate statement of the law of burglary enumerated in NRS 205.060.

Nonetheless, the court did not err by omitting this instruction because the instruction duplicates, and is less accurate than, the burglary instruction the court gave as instruction 31.[3] *See Crawford*, 121 Nev. at 754, 121 P.3d at 589. Thus, the district court did not abuse its discretion by rejecting the three instructions that Sanchez-Dominguez proffered.

### III.

Sanchez-Dominguez also argues that jury instruction number 24 did not include all the elements of felony murder. The instruction read:

> The elements of the second category of First Degree Murder are:
>
> 1. During the defendant's perpetration or attempted perpetration of a Burglary;
>
> 2. a killing resulted.
>
> Whenever death occurs during the perpetration or attempt to perpetrate certain felonies, including Burglary, the killing constitutes First Degree Murder. This second category of First Degree Murder is the "Felony Murder" rule.

While the district court was settling jury instructions, Sanchez-Dominguez objected that the phrase "a killing resulted" did not have the same meaning as "a murder committed in the perpetration." He did not tender an alternative instruction to capture this concept or expand on this objection.

---

[3]Instruction 31 read: "The elements of the crime of Burglary are: (1) the defendant willfully and unlawfully; (2) entered any house, room apartment, tenement, shop or other building; (3) with the intent to commit: (a) assault, or (b) battery, or (c) any felony crime; including coercion and/or kidnapping."

Now, for the first time on appeal, Sanchez-Dominguez argues that instruction 24 erroneously omitted the principle of causation from its definition of felony murder, thereby relieving the State of its burden of proving "that the killing [was] linked to or part of the series of incidents so as to be one continuous transaction," as required by *Payne v. State*, 81 Nev. 503, 506-07, 406 P.2d 922, 924-25 (1965). At oral argument, Sanchez-Dominguez admitted that he did not request a causation instruction or use causation as a theory of his defense. And so, Sanchez-Dominguez essentially argues that the district court had a sua sponte obligation to instruct the jury on the required connection between the burglary and the killing.

Generally, a party's failure to object to or request an instruction precludes appellate review. *Flanagan v. State*, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996); *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (failure to clearly object to a jury instruction generally precludes review). There is an exception to this rule, however, if a plain and obvious error occurred that is so serious, it affected the defendant's substantial rights. *Green*, 119 Nev. at 545, 80 P.3d at 95. "In conducting plain error review, we must examine whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights." *Id.* To demonstrate plain error, the appellant has the burden of demonstrating actual prejudice. *Id.*

A.

"A necessary antecedent to invoking the plain-error doctrine is to determine whether error occurred at all." *People v. Walker*, 982 N.E.2d 269, 273 (Ill. App. Ct. 2012); *see also Archanian v. State*, 122 Nev. 1019,

1031, 145 P.3d 1008, 1017 (2006) (the first step in conducting plain-error analysis is to consider whether an error exists).

NRS 200.030(1)(b) defines first-degree felony murder as a killing that is "[c]ommitted in the perpetration or attempted perpetration of" certain felonies, including burglary. The phrase "[c]ommitted in the perpetration or attempted perpetration" of a felony does not give clear answers as to the time, place, and causal connection required. 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.5(f) (2d ed. 2003). And, as noted in *Payne*, 81 Nev. at 506, 406 P.2d at 924, "[t]he point at which the crime was 'perpetrated' . . . has been subject to varying degrees and wide latitude."

Sanchez-Dominguez construes the phrase "committed in the perpetration of" temporally—as requiring that the killing occur *before* all the statutory elements of burglary have been completed. Citing *Carr v. Sheriff*, 95 Nev. 688, 689-70, 601 P.2d 422, 423-24 (1979), he maintains that he was no longer engaged "in the perpetration" of a burglary when he shot Roberto; the burglary, he argues, was complete once he had entered the family home with the specific intent to commit a felony against Maria. Because the burglary was completed before Roberto was killed, Sanchez-Dominguez maintains that the felony-murder rule does not apply.

## B.

### 1.

The phrase "in the perpetration of" has common-law roots. In most states, "felony murder statutes are premised upon the 1794 felony-murder statute of Pennsylvania." *People v. Gillis*, 712 N.W.2d 419, 427 (Mich. 2006) (comparing the Pennsylvania statute with Michigan's identical felony-murder statute); *see also* 2 *Wharton's Criminal Law* § 147

Supreme Court
of
Nevada

(O) 1947A

(15th ed. 1994) ("In most states, the felony-murder statutory pattern continues to this day to be grounded conceptually on the 1794 felony-murder statute of Pennsylvania"). Pennsylvania defined felony murder as "[a]ll murder . . . which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery or burglary . . . ." *Rodriguez v. State*, 953 S.W.2d 342, 346 (Tex. App. 1997) (citing Edwin Keedy, *History of the Pennsylvania Statute Creating Degrees of Murder*, 97 U. Pa. L. Rev. 759 (1949)).

Nevada's original first-degree murder statute dates back to territorial days and used the same "in the perpetration of" language to describe a killing committed during the course of an enumerated felony. *See* 1861 Laws of the Territory of Nevada, ch. 28, § 17, at 58 (murder includes a killing "which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, or burglary . . ."); *see also State v. Millain*, 3 Nev. 409, 440 (1867) ("Let us here, however, repeat the parent statute, being the Pennsylvania one of 1791.").[4] The Nevada Legislature has continued to use this language, with small changes, for over 153 years. Much like the current statute, the original version did not define "in the perpetration of." But because this language was widely used, the contemporaneous understanding of "in the perpetration of" among the states in the mid-to-late 1800s is useful in understanding what Nevada's statute meant in 1861 and still means today.

---

[4]The 1791 statute that Nevada adopted is identical to the 1794 version that most states followed.

Indiana was one of the first states to address the meaning of "perpetration." In an 1876 decision, the Indiana Supreme Court upheld a felony-murder conviction where the defendant killed a marshal who confronted him after he broke into a drug store. *Bissot v. State*, 53 Ind. 408, 411-12 (1876); *see also State v. Pratt*, 873 P.2d 800, 811-12 (Idaho 1993). Rejecting the suggestion the burglary was already "complete" before the killing occurred, the court explained that "where the homicide is committed within the *res gestae* of the felony charged, it is committed in the perpetration of, or attempt to perpetrate, the felony within the true intent and fair meaning of the statute," and affirmed the conviction. *Bissot*, 53 Ind. at 413-14.

In another early case, Ohio similarly rejected a defendant's argument that a killing was not "in the perpetration of" a burglary because the burglary was complete before he killed the victim. *Conrad v. State*, 78 N.E. 957, 958-59 (Ohio 1906). Citing the well-established rule that statutory construction must not defeat the purpose of a statute, the court explained that a killing within the res gestae of burglary is committed in the "perpetration of" the burglary, as the term is used in the felony-murder statute. *Id.* at 959; *see also Dolan v. People*, 64 N.Y. 485, 497 (1876) (even if the offense of burglary is "doubtless complete," an accused "may be said to be engaged in the commission of the crime until he leaves the building").

And in 1905, this court used a similar analysis when it interpreted the time requirement of the felony-murder rule. *See State v. Williams*, 28 Nev. 395, 82 P. 353 (1905). There, the defendant claimed he finished robbing a victim two minutes before shooting the victim and he therefore could not be found guilty of first-degree murder. *Id.* at 407, 82 P.

at 353. This court disagreed and affirmed Williams's conviction because the shooting was part of a continuous assault that began with the robbery and did not end until after the shooting. *Id.*

2.

The felony-murder rule has not substantially changed over time. Its "purpose [is] to deter felons from killing negligently or accidentally by holding them strictly responsible for the killings that are the result of a felony or an attempted one." *Payne*, 81 Nev. at 506, 406 P.2d at 924. *See also People v. Wilkens*, 295 P.3d 903, 911 (Cal. 2013) ("Once a person perpetrates . . . one of the enumerated felonies [in the felony-murder statute], then in the judgment of the Legislature, he is no longer entitled to such fine judicial calibration, but will be deemed guilty of first degree murder . . . ."). Because the felony-murder rule seeks to make punishment more certain, "[i]t was not intended to relieve the wrong-doer from any . . . consequences of his act." *People v. Boss*, 290 P. 881, 884 (Cal. 1930). Consistent with this purpose, under NRS 200.030(1)(b), the perpetration of a felony does not end the moment all of the statutory elements of the felony are complete. Instead, the duration of felony-murder liability can extend beyond the termination of the felony itself if the killing and the felony are part of one continuous transaction. *See, e.g., State v. Hardy*, 283 P.3d 12, 18-19 (Ariz. 2012) (en banc) (upholding felony-murder conviction where a felony occurred before a fatal shooting); *Yates v. State*, 55 A.3d 25, 34 (Md. 2012) (holding that "the felony murder doctrine applies when the felony and the homicide are parts of one continuous transaction").

While the phrase "in the perpetration of" suggests a temporal component, it is not absolute; "the crimes of arson, burglary and rape may

SUPREME COURT
OF
NEVADA

(O) 1947A

be considered to continue while the building burns, while the burglars search the building and while the sexual connection is maintained." LaFave, *supra*, § 14.5(f); *see also* 2 Charles E. Torcia, *Wharton's Criminal Law* § 150 (15th ed. 1994 & Supp. 2012) ("the period during which a burglary is deemed to be in progress has ordinarily been extended"). If the opposite were true and a technical construction was given to the statute, as advanced by Sanchez-Dominguez, it would make it "quite impracticable to ever convict for a murder committed in the perpetration of any of the felonies mentioned" in the felony-murder statute. *Bissot*, 53 Ind. at 412; *see also Pratt*, 873 P.2d at 811-12 (to say felony murder predicated upon burglary cannot obtain once the burglary is complete would restrict the felony-murder rule to cases where "the burglar had one leg over the windowsill or one foot across the threshold" and defeat the purpose of the felony-murder statute (internal quotations omitted)).

### 3.

Thus, both historical and modern interpretations of the phrase "in the perpetration of" as used in the felony-murder rule lead to the same conclusion: the phrase encompasses acts beyond the predicate felony's statutory elements to include all acts connected to the predicate felony. So, even granting that Sanchez-Dominguez had completed the statutory elements of burglary by the time he killed Roberto, the felony-murder rule still applies because the killing occurred moments later while Sanchez-Dominquez remained in the family home uninvited.

### C.

But Sanchez-Dominguez argues that NRS 200.030 additionally requires, as a separate element, direct and immediate causation between the underlying felony and the victim's death. He

Supreme Court of Nevada

(O) 1947A

12

asserts that if a felony is already complete, there can be no direct causal connection between the felony and the killing, such that the district court's failure to instruct on causation beyond the reference to "a killing resulted" in instruction number 24 constitutes plain error. We disagree.

A cause is "something that precedes an effect or result," whereas perpetration is a specific type of causation where an actor "commit[s] or carr[ies] out" a crime. *Black's Law Dictionary* 250, 1256 (9th ed. 2009). So, if a person commits a homicide "in the perpetration" of a felony, he commits the homicide while "causing" a felonious event. In other words, "[t]he only nexus required is that the felony and the killing be part of a continuous transaction." *People v. Thompson*, 785 P.2d 857, 877 (Cal. 1990). And with regard to Sanchez-Dominguez's actions, that nexus is established.

After all, the felony-murder rule holds felons strictly accountable for the consequences of perpetrating a felony, and it is immaterial whether a killing is intentional or accidental. *State v. Fouquette*, 67 Nev. 505, 529-30, 221 P.2d 404, 417 (1950); *Walker*, 982 N.E.2d at 275) (discussing pattern jury instructions); *People v. Huynh*, 151 Cal. Rptr. 3d 170, 191 (Ct. App. 2012) ("the felony-murder rule imposes a type of strict liability on the perpetrator . . ."). So, even if a perpetrator did not intend to cause a death, causation is assumed where a killing would not have occurred but for the perpetrator's purposeful decision to cause a felony. *See, e.g., Walker*, 982 N.E.2d at 270 (upholding a felony-murder conviction where a Jehovah's Witness's decision to refuse a blood transfusion actually caused death because the victim would not have needed a life-saving transfusion but for perpetrator's actions); *Gillis*, 712 N.W.2d at 422-23 (holding felony-murder rule applied where a burglar

killed two people during a high-speed police chase). Accordingly, "in the perpetration of" captures the nominal causation that felony murder requires.

This is not to say that a felon is responsible for "mere coincidence[s] of time and place." 2 LaFave, *supra*, § 14.5(f). For example, the felony-murder rule would not apply where a bank customer unaware that a robbery is taking place suffers a fatal heart attack from natural causes. *Id. See also, e.g., Huynh*, 151 Cal. Rptr. 3d at 190-91 (explaining that "causation principles" are only pertinent where other acts allegedly caused the death). But in these situations what has absolved the defendant of felony-murder liability is not a lack of causation, but rather that the death did not occur "in the perpetration of" the felony.

Here, Roberto's death would not have occurred but for Sanchez-Dominguez's burglary of the home, and there is no doubt that Sanchez-Dominguez shot Roberto at point-blank range as Roberto stood between Sanchez-Dominquez and Roberto's and Maria's mother, the matriarch of their family. Even though Sanchez-Dominguez completed the statutory elements of burglary once he crossed the threshold of the house, Roberto's efforts to defend his family and home were natural consequences of Sanchez-Dominguez's unlawful entry. *See State v. Contreras*, 118 Nev. 332, 336, 46 P.3d 661, 663 (2002) ("It should be apparent that the Legislature, in including burglary as one of the enumerated felonies as a basis for felony murder, recognized that persons within domiciles are in greater peril from those entering the domicile with criminal intent . . . .'" (quoting *People v. Miller*, 297 N.E.2d 85, 87 (N.Y. 1973))). Accordingly, as we have indicated above, the killing that resulted falls within the purview of the first-degree felony-murder statute. *See,*

*e.g., Contreras*, 118 Nev. 337, 46 P.3d at 664 (reversing a district court's dismissal of a felony-murder charge predicated upon burglary because the legislative language in NRS 200.030(1)(b) is clear); *State v. Burzette*, 222 N.W. 394, 399 (Iowa 1928) (upholding felony murder predicated upon burglary even though the killing happened after the perpetrator's illegal entry); *Dolan*, 64 N.Y. at 498-99 (same); *Conrad*, 78 N.E. at 958 (same); *Hardy*, 283 P.3d at 18-19 (same).

In light of this analysis, we conclude that the district court did not commit plain error in instructing the jury on the felony-murder rule. Its instruction informed jurors that felony murder requires a finding that, during the perpetration or attempted perpetration of a burglary, a killing resulted. This language closely mirrors NRS 200.030(1)(b), as interpreted in *Payne*, 81 Nev. at 506-07, 406 P.2d at 924-25. The district court did not err by not sua sponte including more in the instruction than it did.

Thus, we conclude that the assignments of error are without merit and affirm the judgment of conviction.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

 

CHERRY and SAITTA, JJ., dissenting:

We respectfully dissent. We would reverse the judgment of conviction on the grounds that the district court plainly erred in failing to instruct the jury that it could not convict appellant of felony murder if it concluded that the crime of burglary was completed at the time of the killing.

The felony-murder rule exists "'to deter dangerous conduct by punishing as a first degree murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill.'" *Nay v. State*, 123 Nev. 326, 332, 167 P.3d 430, 434 (2007) (quoting *State v. Allen*, 875 A.2d 724, 729 (Md. 2005)). It aims to deter a person from committing the felony itself, or, at the very least, to avoid committing it in a violent manner. *Id.* It cannot apply where the perpetrator does not have the "'intent to commit the underlying felony at the time of the killing,'" *id.* (quoting *State v. Buggs*, 995 S.W.2d 102, 107 (Tenn. 1999)), because "the intent to commit the felony supplies the malice" which elevates the killing to a murder, *id.* This rule alleviates the State's burden of proving the malice required for murder if it shows that the murder occurred during the course of certain felonies. *See Rose v. State*, 127 Nev. ___, ___, 255 P.3d 291, 295 (2011) ("The felony-murder rule makes a killing committed in the course of certain felonies murder, without requiring the State to present additional evidence as to the defendant's mental state."). Accordingly, this court should be cautious with any ruling that could expand this doctrine.

In holding that the district court did not err in denying the requested instructions that burglary could not support felony murder if it

ended prior to the killing, the majority adopts the premise that the killing occurred within the res gestae of the burglary and, therefore, "in the perpetration of" the burglary. It relies on *State v. Pratt*, 873 P.2d 800, 811-12 (Idaho 1993); *Bissot v. State*, 53 Ind. 408, 411-12 (1876); *Dolan v. People*, 64 N.Y. 485, 497 (1876); and *Conrad v. State*, 78 N.E. 957, 958-59 (Ohio 1906). These cases, while similar to each other, are too dissimilar to the facts before us. In each of the cited cases, the defendants entered a structure with the intent to steal property. *See Pratt*, 873 P.2d at 811-12 (entering home with intent to steal); *Bissot*, 53 Ind. at 408 (entering drug store for purpose of robbing it); *Dolan*, 64 N.Y. at 487 (entering dwelling with intent to steal); *Conrad*, 78 N.E. at 958 (entering home with intent to remove property). During the burglary, or their escape from the premises, a killing occurs. The cases concluded that the burglary continued until the defendants left the building with the property they intended to steal. *See Pratt*, 873 P.2d at 811-12 (holding that killing occurring after entry but before belongings were removed occurred in the perpetration of the burglary); *Bissot*, 53 Ind. at 408 (holding that killing occurring during burglary at drug store was committed in the perpetration of the burglary); *Dolan*, 64 N.Y. at 497 (holding that a burglar "may be said to be engaged in the commission of the crime until he leaves the building with his plunder"); *Conrad*, 78 N.E. at 959 (holding that killing occurring during escape from burglary of dwelling occurred in the res gestae of the burglary). Inherent in the intent to steal is the desire to carry that property from the structure in order to enjoy the possession of it. *See State v. Fouquette*, 67 Nev. 505, 528, 221 P.2d 404, 416 (1950) ("The escape of the robber with his ill-gotten gains by means of arms is as important to

SUPREME COURT
OF
NEVADA

(O) 1947A

2

the execution of the robbery as gaining possession of the property."). Therefore, the felonious intent with which these defendants crossed the threshold informed their actions during the crime and accompanied them in their flight. *See id.* at 527, 221 P.2d at 416 ("Robbery, unlike burglary, is not confined to a fixed locus, but is frequently spread over considerable distance and varying periods of time."). This case, conversely, lacks such unifying intent.

The evidence produced at trial showed that Sanchez-Dominguez entered the home of his estranged wife's family with the intent to commit assault, battery, coercion, or kidnapping against his estranged wife. The charged burglary was complete when he entered the home. *See Carr v. Sheriff, Clark Cnty.*, 95 Nev. 688, 689-90, 601 P.2d 422, 423 (1979) ("The offense of burglary is complete when the house or other building is entered with the specific intent designated in the statute."). Upon learning that his wife was not at home and, therefore, the crimes he intended to inflict upon her became impossible to complete, the intent that accompanied Sanchez-Dominguez across the threshold of the residence waned. He did not attempt to escape, which may have demonstrated the logical continuation of the intent, but instead abandoned it. Thereafter, Sanchez-Dominguez's actions became informed by an intent that arose after entry into the home and could not support a burglary conviction, *see State v. Adams*, 94 Nev. 503, 505, 581 P.2d 868, 869 (1978) ("A criminal intent formulated after a lawful entry will not satisfy the statute."), and was separate and distinct from the earlier intent which accompanied him into the home.

This discontinuity in the intent distinguishes the instant case from those relied upon by the majority. Unlike the defendants in those cases, Sanchez-Dominguez's actions after the completion of the burglary were not the logical continuation of the intent that accompanied him through the door. *See Payne v. State*, 81 Nev. 503, 507, 406 P.2d 922, 924 (1965) ("The res gestae of the crime begins at the point where an indictable attempt is reached and ends were the chain of events between the attempted crime or completed felony is broken, with that question usually being a fact determination for the jury."). Therefore, there was a factual issue as to whether the killing occurred in the course of the burglary that turned on an obscure legal theory and the district court plainly erred in failing to provide sufficient instruction for the jury to evaluate the facts before it. *See Crawford v. State*, 121 Nev. 744, 754, 121 P.3d 582, 588 (2005) ("Jurors should neither be expected to be legal experts nor make legal inferences with respect to the meaning of the law; rather, they should be provided with applicable legal principles by accurate, clear, and complete instructions specifically tailored to the fact and circumstances of the case.").

We further conclude that the failure to give the instruction affected Sanchez-Dominguez's substantial rights. *See* NRS 178.602; *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). Although the evidence unquestionably shows that Sanchez-Dominguez killed the victim, it is a close question regarding whether that killing occurred in the perpetration of the earlier burglary. Further, as there was evidence that Sanchez-Dominguez was extremely intoxicated, the evidence supporting the

premeditation theory of liability was not so convincing that the failure to give the instruction did not have a prejudicial impact on the verdict.

Accordingly, we would reverse the judgment of conviction and remand for a new trial.

_____, J.
Cherry

_____, J.
Saitta